Harold KLOKSTAD, Plaintiff and Appellant,

v.

Leonard F. WARD, Ward-Williston Drilling
Co., Defendants and Respondents.

No. 8164.

Supreme Court of North Dakota.

Nov. 10, 1964.

Duffy & Haugland, Devils Lake, for
plaintiff and appellant.

Joseph P. Stevens, Minot, for defend-
ants and respondents.

TEIGEN, Judge.

This is an appeal by the plaintiff from a
judgment in his favor and from an order
denying a new trial. It is premised on an

alleged error in the instructions to the jury and the insufficiency of the evidence to justify the amount of the verdict.

The plaintiff is the owner of land upon which a producing oil well is located. The well is on pump and produces salt water with the oil. As a result of the pumping action the salt water and crude oil form an emulsion which will not separate without the use of chemical and heat. To separate these two fluids a heater-treater was installed at the well site. The salt water is permitted to escape to a salt water or brine pit located near the well. Salt water is destructive to vegetation and poisonous to livestock and may cause land over which it is permitted to flow to become permanently unfit for agricultural purposes. For this reason the disposal of salt water is regulated by the Industrial Commission of the State of North Dakota.

Three oil wells were drilled on the land in question. Only one is a producer. The plaintiff sued for damage to growing crops that occurred when one of the well sites was prepared under the provisions of the lease. He also sued for permanent damage to his land resulting from alleged negligence in permitting salt water to flow upon it, caused by the failure to construct the salt water pit in accordance with the regulation. The jury returned a verdict in favor of the plaintiff on both counts. Plaintiff contends, however, the amount of the verdict is too small and is not justified by the evidence. He asks new trial.

The plaintiff contends the court erred in giving one instruction. This was specified as error in plaintiff's motion for new trial to the district court for the first time. The district court's memorandum denying new trial considered this specification but also noted that the proposed written instructions were submitted to counsel before the jury was instructed and that no exceptions were taken. It denied the motion. The trial record discloses the following colloquy after both parties had rested:

"THE COURT: The record should show that at the commencement of the proceedings this morning, prior to the conclusion of this case and prior to argument of the case to the Jury, that the Court submitted to respective counsel the written Instructions which this Court proposes to give to the Jurors, and at this time, pursuant to Rule 51 (c) of the N.D.R.Civ.P., the Court requests counsel to designate such parts or omissions of these Instructions as respective counsel may deem objectionable.

"Mr. Benson?

"MR. BENSON: I have none, sir.

"THE COURT: Mr. Stevens?

"MR. STEVENS: We have none, sir.

Rule 51(c) of the North Dakota Rules of Civil Procedure reads as follows:

"Exceptions to Instructions. The giving of instructions and the failure to instruct the jurors shall be deemed excepted to unless the court, before instructing the jurors, shall submit to counsel the written instructions which it proposes to give to the jurors and shall ask for exceptions to be noted, and thereupon counsel must designate such parts or omissions of such instructions as he may deem objectionable. Thereafter, only the parts or omissions so designated shall be excepted to by the counsel designating the same. All proceedings connected with the taking of such exceptions shall be in the absence of the jurors and a reasonably sufficient time shall be allowed counsel to take such exceptions and to note the same in the record of the proceedings."

Counsel for the plaintiff admits the instructions were submitted and no exceptions were taken but argues that, because objection was made to the challenged instruction in connection with the motion for new trial, the issue has been presented to the trial court and this is all that is re-

quircd under the rule announced in Ostmo v. Tennyson, 70 N.D. 558, 296 N.W. 541. In that case this court merely held that upon an appeal from an order denying a motion for a new trial, we will not review any alleged errors not brought to the attention of the trial court and therefore refused to review alleged errors in the instructions to the jury. The text of the opinion states no exceptions to the instructions were filed at any time and the attention of the trial court was not called to the alleged errors, but the opinion does not state that proposed written instructions were submitted to counsel for examination and the taking of exceptions.

This case is not authority for an exception to the procedural rule set forth above. To hold otherwise would make the rule meaningless. Where the trial court submits proposed written instructions to counsel and asks that exceptions be taken and allows a reasonably sufficient time, but no exceptions are taken and counsel states he has none, objections to the instructions are waived and cannot be raised on a motion for new trial as error at law. Rule 51(c), N.D.R.Civ.P., supra.

> "Objections to the instructions must be timely made, and an objection first made after verdict or in a motion for a new trial is too late in the absence of statutes requiring a different holding."

4 C.J.S. Appeal & Error § 306(2).

The plaintiff also claims insufficiency of the evidence to justify the verdict in that the verdict is grossly insufficient under the evidence. The case was tried to a jury. It returned a verdict for the plaintiff against the defendant Leonard F. Ward and assessed damages in the sum of $42.75 for damages to growing crops, and in the sum of $600 for damages to plaintiff's land, making a total of $642.75. It dismissed the action against the defendant Ward-Williston Drilling Company. The dismissal is not alleged as error.

The complaint was amended twice during the trial on motion by the plaintiff. The complaint in final form prayed for damages in the amount of $500 to growing crops and $4,500 as permanent damages to land as agricultural land. The plaintiff does not own the oil and gas underlying the land.

This is the second trial of this case. In the first trial the complaint, as amended, alleged special damages to growing crops in the sum of $3,500 and general damages for loss of use in the sum of $1,500, for a total of $5,000. The jury returned a verdict in favor of the plaintiff in the amount of $2,-500. The defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial. One of the grounds specified was the insufficiency of the evidence to justify the amount of the verdict. The trial court denied the motion for judgment notwithstanding the verdict and ordered new trial on the ground of the insufficiency of the evidence to justify the amount of the verdict, unless the plaintiff would consent to a reduction of the judgment from $2,500 to $1,000. The first trial, however, was not tried on the theory of permanent damage to land. The plaintiff refused to accept the reduced amount and the case was retried. During the second trial, the theory of the plaintiff's case was changed. Plaintiff, in the course of the second trial, again amended his complaint to seek recovery for permanent damage to land abandoning the claimed damage for loss of use. For this reason we will not consider the previous trial as having any weight in this appeal.

The trial court instructed the jury that the regulations provide that salt water or brines may be impounded in excavated earthen pits, provided the level of the liquid in the pits shall at no time be permitted to rise above the lowest point of the ground; that all pits shall have a continuous embankment surrounding them sufficiently above the level of the surface to prevent surface water from running into the pit; that such embankment shall not be used to impound salt water or brine and that the salt water or brine shall not be allowed to flow over the surface of the land or into .

streams. The pit in this case, although of ample size and depth, had no embankment. It was located in a slough which was a part of a draw or low area. When exceptionally heavy rains came, the water flowed into the slough and the pit and out again. The salt water was then permitted to flow on to surrounding land. The plaintiff contends that this caused permanent damage to his land because it became saturated with salt water. According to the plaintiff's testimony, the area damaged was approximately 10 or 12 acres. He also contends that, in addition, a 9 or 10 acre tract of land is cut off from the rest of his farm by reason of the salt water seeping into the 10 or 12 acre area. The defendants denied that the overflowing of this salt water mixed with rain water caused any damage to the surrounding land or any inconvenience in farming the adjacent 9 or 10 acre tract and introduced evidence to show access to this tract was cut off by a section-line road being constructed without an approach being built.

The evidence is in conflict as to the amount of damage to the plaintiff's land. According to the plaintiff's testimony and that of one of his neighbors, the value of the entire quarter section, before and after the damage, was reduced by four to five thousand dollars. Evidence introduced by the defendants indicated a loss of value because of salt water damage at $50 per acre for the area damaged. The jury allowed $600 permanent damage to the land which indicates the jury computed the amount on the basis of 12 acres of land damaged at $50 per acre.

The plaintiff argues the defendants' witness on values was laboring under the mistaken idea that all of the damaged land was slough land. The land damaged consists of 5 acres of slough land and the balance of 5 to 7 acres is farm land. The witness had placed a value of $50 per acre on the slough land and $100 per acre on the farm land. Therefore, the damage to the land, based on this witness's testimony, equals $250 on the slough land and $700 (assuming 7 acres were damaged) on the farm land, for a total of $950. This figure disregards the damage, if any, caused to the 9 or 10 acre tract cut off from the rest of the farm. Therefore, he argues, there is no evidence which supports a verdict of $600.

The district judge heard the witnesses testify and saw them on the witness stand. In his memorandum decision denying new trial, he found "the award of damages was within the scope of the testimony."

We have examined the testimony. We find that on cross-examination, the defendants' witness testified as follows:

"Q. Now, you stated the price a while ago, Mr. Cameron, on a quarter section of land before it was allegedly damaged by salt water. Now, I call your attention to the fact that the testimony in this lawsuit is that the area damaged consisted approximately five acres of low or hay land, and from five to eight acres of crop land.

"A. Yes.

"Q. Assuming that twelve or thirteen acres to have been damaged in 1954, or thereabouts, what then would you put the valuation on the Northwest Quarter as compared to the $16,000 valuation that you put on it before the damage?

"A. $50 an acre for whatever the damaged acres is. I don't know what the damaged acres is, if there are any. If there was no damage there, I would still say that the slough area would probably be to me, if I was buying it, it would be $50 less, whether there is damage or whether there isn't. I don't know whether there is damage.

 *　　*　　*　　*　　*　　*

"Q. And as one who is acquainted with these matters and has good judgment regarding it, I am just asking you if you can place that valuation in thousands of dollars.

"A. What?

"Q. Well, valuation. You have said $16,000 before.

"A. Okay. How much less? I would say $600 less.

"Q. $600?

"A. Yes.

"Q. That would be $15,400?

"A. Yes.

"Q. Now do I understand, Mr. Cameron, that that figure is based on your personal observation of only the three or four acre slough area?

"A. You stated first that it was twelve to fifteen acres, on what I would put my valuation on."

This testimony is clear. It is sufficient to support the amount of the verdict for permanent damage to land. The plaintiff, however, points to the following testimony of this witness:

"A. Well, if there is land damaged beyond this slough area, I cannot testify to that because I do not know—

"Q. Mr. Cameron, that is what I wanted to get at. The area you observed and looked at you depreciate by $600?

"A. That is correct."

He argues that it establishes that the witness had the mistaken idea that all of the damaged land was slough land. However, the witness is speaking of "slough area" and a "slough area" was defined by the cross-examiner to contain farm land when he asked:

"Q. I realize that, Mr. Cameron, but what I am trying to get at, if I can get it in figures, you stated a while ago what was the valuation before and after; now the only thing I am getting at is, and I realize that you did not see or were not aware of the fact that *there was farmland in this slough area*—do you know what I mean? There was

three or four acres of low land that you observed and testified about. Now I was hoping to get a figure, and I believe that that is what Mr. Stevens wanted to get at. * * *"

From the record it appears clear to us that the "slough area" is the low area that formed the draw where the water ran after the very heavy rains and contains several sloughs. Part of this area was farm land and part was hay land. The evidence amply sustains the amount of the verdict for damage to land.

Reviewing the record pertaining to the crop damage caused by the construction of a well site, the plaintiff's testimony supports the verdict. Plaintiff testified that the field in which the well was located contained 20 acres, that he harvested 18½ acres which produced an average of 20 bushels to the acre, and that the well site occupied "maybe an acre and a half." He did not remember the exact price he received when he sold the grain but that it was from $1.80 to $2.20 per bushel. He also testified that the cost of producing the crop in the entire field, including the summer fallow, was $150. On the basis of this testimony the jury could easily have computed the loss as follows:

1½ acres at 20 bushels per acre equals 30 bushels crop loss which, at $1.80 per bushel, equals a gross loss of $54.

$150 production cost divided by 20 acres equals $7.50 per acre or $11.75, the cost on 1½ acres.

$54 gross crop loss less $11.25 cost of production leaves a loss in net profit in the amount of $42.75, the exact amount found by the jury.

The jury had the right to pass upon the credibility of the witnesses and to determine the weight that should be given to the evidence produced. The trial court saw and heard the witnesses and refused to disturb the verdict. As to whether or not a

new trial should be granted was a matter largely within the discretion of the trial court and the exercise of that discretion will not be disturbed, unless there was an abuse thereof. Butler v. Aetna Insurance Co., 64 N.D. 764, 256 N.W. 214; Martin v. Parkins, 55 N.D. 339, 213 N.W. 574. Viewing the whole case by and large, we are of the opinion that the plaintiff has not shown that the verdict is so contrary to the evidence as to disclose an abuse of discretion on the part of the trial court in denying a motion for new trial.

Upon the whole record we are satisfied that the order and the judgment appealed from should be and are affirmed.

MORRIS, C. J., and STRUTZ, ERICKSTAD, and BURKE, JJ., concur.