George **BRAUER**, individually, George Brauer, Special and General Administrator of the Estate of Elizabeth Brauer, a. k. a. Loretta Brauer, deceased, and George Brauer, as surviving husband of Elizabeth Brauer, a. k. a. Loretta Brauer, deceased, Plaintiffs and Respondents, Plaintiffs and Appellants,

v.

JAMES J. **IGOE** & SONS CONSTRUCTION, INC., a corporation, and City of Bismarck, a municipal corporation, Defendants,

and

Montana-Dakota Utilities Company, a foreign corporation, Defendant and Appellant, Defendant and Respondent.

No. 8570.

Supreme Court of North Dakota.

March 30, 1971.

Rehearing Denied May. 13, 1971.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Robert L. Vogel, of Vogel, Bair & Graff, Mandan, and Irving R. Brand and Stephen B. Swartz, of Maslon, Kaplan, Edelman, Borman, Brand & McNulty, Minneapolis, Minn., for plaintiffs and respondents.

Albert A. Wolf, of Wolf, Glaser & Milhollan, Bismarck, for Montana-Dakota Utilities Company, defendant and appellant.

HEEN, District Judge.

On September 18, 1966, Elizabeth Brauer, wife of the plaintiff, George Brauer, died of burns sustained from an explosion occurring on July 25, 1966, which demolished the Brauer home in Bismarck, North Dakota, and destroyed the contents of the dwelling.

The plaintiff's complaint alleges three causes of action, all based on negligence. The first is that of plaintiff George Brauer, individually, to recover damages for destruction of the residence and its contents. The second is maintained by the plaintiff husband as special administrator of his deceased wife's estate, asking an award for her pain and suffering from the date of her injury until her death. Third, plaintiff George Brauer, as surviving husband, asks damages for Mrs. Brauer's wrongful death.

In 1939 George Brauer moved a dwelling onto four acres of land owned by him on the northern outskirts of the city of Bismarck. The area then was not a part of the city. During the ensuing years Mr. and Mrs. Brauer, working together, extensively improved and remodeled their home. One of the improvements, in 1959, was the piping of gas to the dwelling from the terminal point of Montana-Dakota Utility Company's system, then located at the west edge of the Brauer property. This required the service pipe, buried at an approximate depth of thirty inches, to be angled northwesterly to the Brauer dwelling and to ascend a rise of several feet. The cost of this installation was paid by the Brauers.

About half of the four-acre tract was conveyed to Zion Lutheran Church. On application of Mr. and Mrs. Brauer and the Church, the area in October 1964 was platted and incorporated into the City of Bismarck, with East Turnpike Avenue, an east-west street, lying between the Brauer property on the north and that of Zion Lutheran Church on the south.

Then began a series of events which were to have many consequences for the Brauer family.

The utility company (hereafter referred to as MDU) in 1965 extended its gas main approximately 600 feet to the east from the terminal point at the west edge of the Brauer property, the main being laid at a depth of from two and a half to three feet along the south side of East Turnpike Avenue. The City, at the outset of work on the extension, furnished MDU with projected elevations for the grade of the south side of the avenue. However, in connection with this extension, MDU did not survey to determine how far below the proposed grade it would be necessary to safely emplace its gas mains and service lead pipes.

Later in the same year, 1965, water and sewer mains were laid in the avenue, which necessitated crossing under the Brauer service line leading from the gas main. Before commencing the water project, the water contractor notified MDU of the pending project; and MDU, by staking, marked its gas lines for the information of the water contractor. Such notification by the contractor to the utility was required by the written specifications prepared by the City for each public improvement project, by city ordinance, and by custom developed over the years.

East Turnpike Avenue, upon completion of the laying of the gas, water, and sewer mains, was of rough terrain, unimproved for street purposes and unused as a roadway, with gas pipes buried but not in relation to the projected grade. Because the Brauer dwelling to the north was above street level, the Brauer gas service lead crossed the entire street and at the north edge of the avenue was somewhat higher than the gas main on the south edge.

The streets were graded the following year. In meeting grade specifications as established by the City, a three-foot cut was made on the north side of the avenue over the entrenched gas service line leading to the Brauer residence. The grading contractor did not notify MDU in advance of this operation. Consequently, MDU did not stake out its gas lines in the grading area.

In 1966 James J. Igoe & Sons Construction, Inc., (hereafter called Igoe) was awarded all curb and gutter construction for the City of Bismarck, including that of the Brauer Addition. Priority of construction of the City's many projects was established according to the date of authorization by the City Commission. Upon being scheduled, grades for the addition's curbs and gutters were prepared by the City Engineer's office. Not until a day or two in advance of commencement of actual work was a work order prepared by the office of the City Engineer, authorizing the contractor, which received a copy of the work order, to proceed with construction of the improvement. Issuance of the work order meant work on the project was imminent. No other log or schedule was maintained.

It was the custom and common practice, as well as a requirement under the terms of the general specifications prepared by the City for all municipal improvements, that the contractor, before commencing the project, would notify all utilities affected by the public improvement, and that the utilities would then mark their properties for the safety of all concerned. Igoe had the City's curb and gutter work for fourteen of the eighteen years immediately preceding this case, and during those years, except 1966, notified utilities of impending construction. This procedure, according to the City Engineer, had resulted in no real difficulties.

Project specifications, a part of the contract between the City and Igoe, in part provided:

15. UTILITIES. It shall be the responsibility of the contractor to familiarize himself with the location of * * * gas mains and service lines, * * * and all appurtenances pertaining to utility services. It shall be his responsibility to notify the respective utility companies forty-eight hours in advance of construction and shall consult with personnel of said utility companies regarding any changes or conflicts.

A preconstruction conference took place in March 1966, attended by Edward J. Booth and Robert Gausvik, City Engineer and City Inspector, respectively; James J. Igoe; and Alvin Heier, an Igoe foreman, at which the Brauer Addition curb and gutter specifications were discussed. MDU was not represented at this conference. According to Mr. Igoe, the written specification, Paragraph 15, set forth above, was changed by agreement so that thereafter the City would notify utilities, which included MDU, of specific areas of construction. Mr. Heier's recollection of this matter is unknown, since he was not a witness at the trial. Mr. Booth and Mr. Gausvik recalled discussing the specifications generally at the time, but neither had a recollection of any arrangement whereby the City undertook to give the required notice to utilities. At the conclusion of the preconstruction conference the parties left with different impressions, Mr. Igoe believing he had been relieved of the duty of notifying utilities of impending construction and that the City would give such notification, whereas city officials had no recollection of assuming this obligation.

On July 25, 1966, Wilbur Steiger, a machine operator in Igoe's employ for seven years, commenced grading operations of the street in final preparation for the laying of curb and gutter on East Turnpike Avenue. The City Inspector, on the previous day, had staked grades for the improvement. Cuts had already been made for the sidewalk. The area was then ready for Igoe's last grading operation, requiring a two-inch cut of the street before the pouring of concrete. An important safety detail, however, had been omitted—MDU's gas mains and service lines were unmarked, the utility not having been notified.

Commencing at the west end of the Brauer Addition, Mr. Steiger graded east on the avenue, cutting into street edges for the curbs. On the second pass, on the north side of the street, Mr. Steiger snagged what subsequently proved to be a pipe, about one hundred and fifty feet from the Brauer dwelling. Mr. Gausvik, the City Inspector, arrived as Mr. Steiger was uncovering the snag. Not recognizing the type of pipe snagged, the City Inspector, by radio, talked to the City Water Department, and then went to his office and called MDU, reporting the incident. Approximately fifteen minutes had elapsed when John Steffan, a carpenter working on the church across the street, heard what he described as "a terrible explosion which sounded like a sonic boom," and saw the west wall of the house blown out. Fire developed as Mr. Steffan started across the street, and at that time Mrs. Brauer, enveloped in flames, rushed out of the house. Mrs. Brauer sustained second and third degree burns over eighty per cent of her body, resulting in her death on September 18, 1966.

Investigation revealed that the hitting of the MDU service line in the street by the Igoe grader caused the service pipe to pull apart a distance of twelve and a half inches from the riser or elbow connection at the Brauer residence. Gas percolated into the Brauer dwelling and exploded about ten minutes after the snagging. The igniting cause of the explosion was either a pilot light or spark from some mechanical appliance.

During grading operations, Mr. Steiger saw nothing that indicated there was a buried gas service line in the area.

The plaintiff's complaint, as stated, set forth three causes of action: first, for destruction of the dwelling and its contents; second, for Mrs. Brauer's pain and suffering sustained prior to her death; and third, for her wrongful death. MDU, the City of Bismarck, and Igoe were the named defendants. Various cross-complaints claiming indemnity were asserted by and between the defendants MDU and the City.

All three defendants participated in selection of the jury. Following impaneling of the jury, but before commencement of testimony, the City and Igoe arrived at a settlement with the plaintiff, who gave these defendants a covenant not to sue. The City and Igoe then, over defendant MDU's objection, were severed from the ensuing trial.

In charging negligence on the part of defendant MDU, the plaintiff's complaint alleged that MDU failed to exercise ordinary care in installing and maintaining its gas distribution system under East Turnpike Avenue and adjacent areas; failed to advise the City and Igoe of the exact location of its gas mains and pipes before and during Igoe's grading of the avenue; and failed to supervise or consult in Igoe's grading operation.

MDU, in answering and asking dismissal of the plaintiff's complaint, denied negligence and alleged that the plaintiff's damages, if any, were caused by persons for whom MDU had no responsibility. Further, by its answer, MDU charged that the plaintiff himself was negligent in three particulars:

1. That the plaintiff failed to notify MDU of any changes he made or authorized to be made in his land by grading or construction in the area where MDU's service line had previously been installed in 1959;

2. That the plaintiff failed to inform MDU, the City, and grading contractors that MDU's service line was already installed where earth moving and excavating operations were being carried on;

3. That the plaintiff, with full knowledge of conditions, authorized development of the property without giving proper notice to various parties of existing conditions.

Upon trial, the jury returned verdicts awarding the plaintiff $22,442 for property loss and expenses incurred by reason of Mrs. Brauer's injuries and ensuing death and $70,000 as damages for her wrongful death. No sum was allowed the plaintiff in his capacity as special administrator for the pain and suffering of Mrs. Brauer from the date of her injury until her death, the jury finding for defendant MDU on this issue.

MDU has appealed from the judgment entered pursuant to the verdict and from the trial court's denial of MDU's motion in the alternative for judgment notwithstanding the verdict, or for a new trial, or for a reduction of the verdict.

The plaintiff also appealed from the trial court's judgment entered pursuant to the jury's adverse verdict finding for MDU, dismissing the plaintiff's action based upon Mrs. Brauer's pain and suffering to the time of her death, and further appealed from the denial of the plaintiff's motion for a new trial on this issue.

■ On appeal of a trial court's order denying a motion for judgment notwithstanding the verdict, the evidence is reviewed to determine whether the moving party was entitled to a directed verdict at the close of the evidence of the case. Mikkelson v. Risovi, 141 N.W.2d 150 (N.D. 1966); Lindenberg v. Folson, 138 N.W.2d 573 (N.D.1965).

In *Lindenberg* our court said:

The only question before the appellate court on an appeal from an order deny-

ing a motion for judgment notwithstanding the verdict is whether the motion for a directed verdict should have been granted had the court not been prohibited from granting the same because of Rule 50 (a), N.D.R.Civ.P. (citation omitted)

Lindenberg v. Folson, *supra*, 577.

A motion for judgment notwithstanding the verdict admits the truth of evidence against the movant and also admits inferences and conclusions which reasonably may be deduced from such evidence.

Lindenberg v. Folson, *supra*, 581.

■ Issues of negligence, proximate cause, and contributory negligence ordinarily are fact questions for the jury. Only when the evidence is such that reasonable men can draw but one conclusion do these become issues of law for the trial court. Gleson v. Thompson, 154 N.W.2d 780 (N.D.1967); Degenstein v. Ehrman, 145 N.W.2d 493 (N.D.1966).

■ If fair minded men in the exercise of reason and judgment may draw different conclusions from the evidence, then the issues of negligence, proximate cause, and contributory negligence must be submitted to the jury. Lindenberg v. Folson, *supra;* Schmitt v. Northern Improvement Co., 115 N.W.2d 713 (N.D.1962).

■ In reviewing the sufficiency of the evidence on appeal from a judgment and from an order denying motion for judgment notwithstanding the verdict or for a new trial, the evidence is viewed in the light most favorable to the verdict. Holten v. Amsden, 161 N.W.2d 478 (N.D. 1968); Julson v. Loyal Order of Moose Number 822, 140 N.W.2d 39 (N.D.1966).

■ On review of the evidence in that light, if there is any conflict on substantial matters which required submission of the issues to the jury, then the motion for judgment notwithstanding the verdict properly is to be denied. Armstrong v. McDonald, 72 N.D. 28, 4 N.W.2d 191

(1942); State for the Benefit of Workmen's Compensation Fund v. Yellow Cab Co., 62 N.D. 733, 245 N.W. 382 (1932).

MDU argues in this court that the circumstances of this case did not give rise to a duty on its part to take steps additional to those precautions then in effect. As stated in the defendant's brief:

At no time during the entire examination of the record in this case did Plaintiff establish how or by what steps MDU could have reasonably avoided this particular type of incident. Nor did the evidence establish that this type of incident was foreseeable to the extent that other remedial steps should have been taken, and that those steps would have been effective to prevent the incident.

Three of the defendant's specifications of error deal directly or indirectly with this issue.

A basic issue of this case is whether the plaintiff, by a preponderance of the evidence, has proved actionable negligence on the part of MDU.

■ Actionable negligence is the existence of a duty or obligation on the part of one to protect another from injury, failure to perform or discharge that duty, and resulting injury to such other proximately caused by the breach of duty. Jasper v. Freitag, 145 N.W.2d 879 (N.D. 1966); Larson v. Meyer, 135 N.W.2d 145 (N.D.1965).

■ A utility engaged in the business of transmitting and distributing of gas, because of the dangerous characteristics and properties of the product, in building, emplacing, and maintaining its gas mains and service lines, has the duty to the public of exercising care and diligence proportionate to the danger presented, which was known or should have been known to the utility. Phelps v. Woodward Construction Co., 66 Wyo. 33, 204 P.2d 179 (1949); Richey & Gilbert Co. v. Northwestern Natural Gas Corp., 16 Wash.

2d 631, 134 P.2d 444 (1943); 26 Am.Jur.2d, Electricity, Gas & Steam Sec. 42, at 731 et seq.; 4 T. Shearman & A. Redfield, The Law of Negligence Sec. 765, at 1752 (rev. ed. 1941). This duty owed the public may not be delegated. Mattson v. Central Electric & Gas Co., 174 F.2d 215 (8th Cir. 1949).

MDU offered proof of custom and general practice in the construction business that contractors at the outset of work on municipal improvements would notify the utility so that the latter could mark the location of its gas lines. This served as a safety precaution to avoid dangers and possible injuries presented by snagging and rupture of the lines during construction. To better acquaint contractors and the public generally with this custom, MDU embarked on an education program, through distribution of stickers, brochures, and various other advertisements warning that before digging or excavating, MDU should be called upon to mark its gas lines. It was MDU's claim that no previous trouble had been encountered with contractors in their excavating activities. It developed that MDU had received 108 such calls or requests in 1966. The defendant argues that custom and common practice so established was proof of due care on its part, and that it rightly placed reliance on this accepted procedure.

On cross-examination, however, it was elicited that but one of the 108 calls related to curb and gutter installation; that many contractors did not give MDU notice before excavating, and that in 1966 there were forty to fifty instances of snagging of MDU's gas lines. These facts, the plaintiff contends, should have put MDU on notice that contractors, even though building, were not complying with suggested safety measures, by failing to request the marking of MDU's gas lines in 1966; and that any so-called custom and practice was not reliable. In addition, the plaintiff claims that MDU was aware of the proposed grade of East Turnpike Avenue, a grade approximately three feet be-

low the level previously existing, and that MDU knew Igoe had been awarded the City's curb and gutter work scheduled for completion in 1966, which work had been projected in relation to the proposed grade, but that MDU did nothing.

What has been said demonstrates that the evidence of the case was in conflict as to whether the defendant utility had notice of a danger present in the condition of its gas lines. Such conflict of evidence required submission of the issues to the jury; and the trial court properly denied the appellant's motion for judgment notwithstanding the verdict.

The defendant, in moving for a new trial, alleges that the evidence is insufficient to justify the verdict and that the verdict is not in accordance with the law.

■ Intlehouse v. Rose, 153 N.W.2d 810 (N.D.1967), employed the following language:

In determining on appeal whether the evidence was sufficient to support the verdict, our court has said:

Upon an appeal from a case tried to a jury, our review of the facts is limited to a consideration of whether there is substantial evidence to sustain the verdict. If there is such evidence, we are bound by the verdict.

In re Hendricks' Estate, 110 N.W.2d 417, 421 (N.D.1961).
Intlehouse v. Rose, *supra,* 817.

See also: Sprenger v. Sprenger, 146 N.W.2d 36 (N.D.1966).

■ From a consideration of the evidence—and viewing the evidence in the light most favorable to the verdict, as we are required to do—we believe the jury reasonably could have found that MDU, upon emplacing the service line to the Brauer dwelling in 1959, acquired knowledge of the rough and rolling terrain of the area; that MDU, having constructed the service line, certainly knew the depth

of the line and that it was not emplaced to grade (in other words, the gas line followed the contour of the slopes and hills of the addition); that MDU had actual knowledge of the projected grade for East Turnpike Avenue and knew, or reasonably could have known, that this was a developing area and would require grading for streets and sidewalks, necessitating cutting into slopes and hills of the addition; that MDU knew, or reasonably should have known, that the projected grade for the addition's streets and sidewalks was dangerously near to or below the level of the service line buried by MDU in 1959; that the practice and custom whereby excavators before digging would contact MDU was demonstrably imperfect and could not be relied upon by the defendant utility; that despite this knowledge or means of knowledge, MDU, although having ample opportunity, did nothing; that thereby MDU failed to exercise care and diligence proportionate to the danger which was its duty to avoid and should have anticipated that the service pipe would be snagged and damaged; and that such negligence was a proximate cause of the explosion and ensuing injuries.

A gas utility, in Phelps v. Woodward Const. Co., 66 Wyo. 33, 204 P.2d 179 (1949), was held liable for damages caused by an explosion. The Wyoming court held that the utility knew, or should have known, that the plaintiff's lot, uneven as it was, would be graded and leveled at some future time, and care in laying the service pipe should have been in proportion to that anticipation and knowledge. When the pipe was not so laid, the gas company should have anticipated that it might be hit and snagged. That negligence was held a proximate cause of the explosion and resulted in liability on the part of the defendant utility.

See also: Richey & Gilbert Co. v. Northwestern Natural Gas Corp., 16 Wash.2d 631, 134 P.2d 444 (1943); McWilliams v. Kentucky Heating Co., 166 Ky. 26, 179 S.W. 24 (1915).

The Minnesota Supreme Court, in DeVries v. City of Austin, 261 Minn. 52, 110 N.W.2d 529 (1961), rejected the contention that a gas company was negligent in not keeping accurate records of the depth of its service lines and could not furnish excavators depth information upon demand, even though the utility was aware that there would be excavations in near proximity to the service line which might sever the line, as had happened on previous occasions.

The plaintiff in this case advanced just such a claim, namely, that MDU negligently failed to keep and make available an accurate and up-to-date plat of the depth of its mains and service lines.

In disposing of this issue, the Minnesota court said:

[W]e do not believe that it could be said that the board was negligent in not keeping records showing the exact depth of its service lines. It maintains service for 7,500 customers and it was shown that there was no practical way of ascertaining grade changes in yards or streets where its service lines were laid; that most of such lines were installed before the grading of the yards was completed and when the ultimate grade thereof was unknown; that no ordinance or charter provisions required a specific minimum depth for service lines; and that changes in street grades and surfaces constantly taking place would make any such records confusing, inaccurate, and worthless. We are satisfied that it would be imposing too great a burden and expense upon the board to require that it maintain accurate records as to the exact depth of each of some 7,500 service lines throughout the city. * * *

DeVries v. City of Austin, *supra,* 537–538.

We agree with *DeVries* that omission to maintain records showing exact depths of gas mains and service lines is not negligence. But this rule is not determinative of the issues of the case at hand.

Section III of the ordinance in this case, granting MDU the franchise to transmit and distribute natural or manufactured gas in the city of Bismarck, requires MDU to maintain an efficient distribution system. Thus the duty owed the public by the utility did not end with emplacement of mains and service leads. The principle having application in this case is that expressed in *Phelps*. We hold that a utility, in transmitting and distributing gas, a highly dangerous element, must exercise that degree of care and diligence defined earlier in this opinion; and that under the franchise in this case, MDU's responsibility, as specifically provided, was a continuing duty and did not end with the completion of construction and emplacement of its gas mains and service lines.

It is concluded that the verdict is supported by competent substantial evidence and is in accordance with law.

Asking a new trial by this appeal, the defendant has assigned fourteen specifications of error. Eleven of these specifications claim error by the trial court in its various rulings, any one of which, it is urged, entitles the defendant utility to a new trial.

The defendant in appealing has the burden not only of establishing that the trial court erred in its rulings during trial or in its instructions to the jury, but further must show that such error prejudiced the cause of the appellant.

Zimmer v. Bellon, 153 N.W.2d 757, 760, 29 A.L.R.3d 1431 (N.D.1967), citing Teegarden v. Dahl, 138 N.W.2d 668 (N.D. 1965), and Maier v. Holzer, 123 N.W.2d 29 (N.D.1963).

After both parties had rested in presentation of evidence in trial court, the defendant's claim of contributory negligence on the part of the plaintiff was dismissed on motion. The defendant specifies this ruling as error, contending that the testimony of the case establishes the plaintiff's negligence and bars his recovery of damages.

The evidence falls far short of proving that the plaintiff recognized, or should have recognized, the existence of peril in the attendant circumstances. The trial court's action in dismissing contributory negligence as an issue was correct. Phelps v. Woodward Const. Co., *supra;* 2 Restatement (Second), Torts Sec. 464(c) (1965). *Cf.* Wolff v. Light, 169 N.W.2d 93 (N.D.1969); Borstad v. LaRoque, 98 N.W.2d 16 (N.D.1959); and Lund v. Knoff, 85 N.W.2d 676 (N.D.1957).

It is next argued that the negligence of the City, Igoe, and others was a new and intervening force which broke the causal connection between the defendant's acts and the explosion.

This court, in discussing intervening negligence, used the following language in Wolff v. Light, 156 N.W.2d 175, 180 (N.D. 1967):

> In Chicago, M., St. P. & P. R. Co. v. Johnston's Fuel Liners, Inc., 122 N.W.2d 140, at page 148 (N.D.1963), although the facts are not the same, this court quoted with approval the following from C.J.S.:
>
> "An intervening efficient cause which relieves a negligent wrongdoer of liability is, and must be, a new and independent force which breaks the causal connection between the original wrong and injury, and which itself becomes the direct and immediate cause of the injury. It must be more than a mere concurrent and contributing cause; it must be a responsible cause or a superseding cause, that is, one which has superseded the original act or been itself responsible for the injury. * * * *" 65 C.J.S. Negligence § 111, pp. 688–90.

See also: 2 Restatement (Second), Torts Sec. 447 (1965).

The issue of intervening or superseding cause was properly for jury determination.

State for the Benefit of Workmen's Compensation Fund v. Columbus Hall Ass'n, 75 N.D. 275, 27 N.W.2d 664 (1947). The jury here was adequately instructed at the defendant's request on this issue, and by its verdict found against the defendant. We are of the opinion that the evidence is such that the jury reasonably could have found that the intervening negligence of the third parties, that is, the City, Igoe, or others, should have been foreseen by MDU, which thereby is not relieved of responsibility for its own negligent conduct. Wolff v. Light, 156 N.W.2d 175 (N.D.1967); Phelps v. Woodward Const. Co., *supra*; Richey & Gilbert Co. v. Northwestern Natural Gas Corp., *supra;* 65 C.J.S. Negligence § 111(6), at 1219 et seq. (1966). The evidence is sufficient to sustain this finding by the jury.

■ It is next contended by MDU that the trial court erred in denying certain of its requested instructions. The first, Defendant's Requested Instruction No. 1, was a special interrogatory requiring a jury finding with respect to the negligence of the City and Igoe, who, as noted, were dismissed from the case at the conclusion of jury selection. This contention is dismissed with the comment only that the essential inquiry here was whether MDU was negligent and, if so, whether that negligence was a proximate cause of the explosion and resulting injury. Meyer v. Robb, 125 N.W.2d 145 (N.D.1963). Concurring separate negligence of others, even if a proximate cause of the injury under consideration, does not serve to excuse the responsibility of this defendant for its conduct, and the requested jury finding was immaterial. Stockfeld v. Sayre, 69 N.D. 42, 283 N.W. 788 (1939); Michaelsohn v. Smith, 113 N.W.2d 571, 8 A.L.R.3d 1183 (N.D.1962); Meyer v. Robb, *supra*; McWilliams v. Kentucky Heating Co., *supra*.

■ Defendant's Requested Instruction No. 2, rejected by the court, concerned the relevancy and materiality of custom and general practice as such related to the giving of notice by excavators to the ultility before digging in connection with construction activities. The trial court in effect instructed the jury that custom and general practice were to be considered with all other evidence by the jury in determination of the issue of negligence. This was in accord with the rule of Schmitt v. Northern Improvement Co., 115 N.W.2d 713 (N.D.1962) and Gunderson v. Johnson, 132 N.W.2d 700 (N.D.1965). The vice of the instruction in the form requested by the defendant was that custom and general practice, if proved, established a set standard, conformance with which would have absolved the defendant from all responsibility for its conduct. The primary issue in this case was negligence, the standards of which are defined by our law, custom and usage operating only as evidence to be considered by the jury, with all competent proof in the case, in determination of the ultimate issue of negligence. 38 Am.Jur. Negligence Sec. 34, at 679 et seq. (1941); 65A C.J.S. Negligence § 232, at 638 et seq. (1966). The instruction delivered by the trial court correctly defined the relationship of custom and general practice to this case.

■ The trial court also refused to give Defendant's Requested Instruction No. 3, which reads as follows:

You are instructed that a party has a right to rely upon all other parties complying with the law and their legal responsibilities in relationships with them. A party must not anticipate a violation of the law or the legal obligations of others in the conduct of its own affairs.

The defendant assigns as error the court's refusal to deliver the instruction in the form requested. The instruction was correctly rejected. In the form presented, it is subject to at least two deficiencies. In the first place, it eliminates foreseeability, which is an essential element of the duty owed others by a gas utility in the

transmission and distribution of its product, as this duty has been earlier defined. Second, the language of the request is unfortunate, and its meaning is less than clear.

■ MDU complains of the trial court's ruling prohibiting it from showing that in 1966 only three requests were made for staking to mark gas lines in connection with curb and gutter construction after the explosion of July 25, so that MDU should not necessarily have been alarmed by having had only one such staking request in 1966 before the accident. MDU raised no objection to the testimony relating to the number of such requests made before July 25.

No authority in point was cited by counsel, and this court has not been successful in its search for any. It is obvious, however, that there should be preliminary proof of similarity of circumstances for the respective periods of time for such testimony to be admissible,[1] if indeed it is possible to even establish such a similarity in this instance. The requisite foundational evidence was not here offered. In the absence of such preliminary proof, exclusion of this evidence was not error on the part of the trial court.

■ MDU charges that the plaintiff's counsel, in closing argument to the jury, urged an award of exemplary damages and, in so doing, inferred without actually so stating that the jury should apply the "golden rule"—that is, that the jurors place themselves in the plaintiff's position or award such damages as the jurors would wish if in the same position—because eight of the jurors were from Bismarck and were served by the defendant utility. An immediate objection to the argument was lodged by the defendant's attorney, but without asking for a cautionary instruction or other relief. The plaintiff's counsel denies this construction of his argument and maintains that what he said was a response to an earlier argument made by the defendant's counsel. No transcript of arguments is available, the court reporter not having been requested to take the same, so we do not have at hand the exact statement as questioned, nor do we know its context to all arguments made to the jury.

The trial judge forthwith orally cautioned and advised the jury to disregard this portion of the plaintiff's argument. Again, in charging the jury, the court advised the jury to disregard statements and arguments reflecting the attorneys' opinions or beliefs.

Although the argument of the plaintiff's counsel may have been improper in this instance, we are unable to conclude, under the circumstances here present, that such was prejudicial error. The trial court acted promptly and responsively; and in so doing, we believe, removed any misconception arising from the argument in question. Larson v. Meyer, *supra*; Myers v. Hagert Const. Co., 74 N.D. 435, 23 N.W.2d 29 (1946).

Exception was taken by the defendant to the court's instruction on assessment of damages in the wrongful death action, such charge being as follows:

Claim number three involves an action for damages for wrongful death and the measure of damages to be awarded is the amount you find proportionate to the injuries resulting from the death to the persons entitled to the recovery. Damages may be awarded only for the pecuniary loss or detriment suffered by a surviving heir and of which the negligence of the defendant was the proximate cause, whether or not such loss or detriment could have been anticipated. Damages in any case must be reasonable and must not be greater than the amount claimed by the plaintiff which in this case is $300,000.00.

1. See generally, 29 Am.Jur.2d Evidence Sec. 298, at 342 et seq., and Sec. 300, at 345 et seq. (1967).

■ Specified as error is the use in this instruction of the figure of $300,000.00, the defendant contending that use of such figure suggested that the jury should return a verdict in that amount, or that at least it influenced their verdict. The jury, of course, did not return a verdict in that amount or one approximating that sum.

This court has not previously had occasion to rule on this trial court practice of cautioning the jury that its verdict must not exceed a sum specified by the court. After considering the various authorities as collated in the annotations of 2 A.L.R.2d, Sec. 8, at 461–68, and Sec. 18, at 482–83, and in view of other separate instructions in the written charge to the jury, advising the jury that its verdict must be based on the competent evidence of the case, we hold that the instruction here in question was not improper.

Many jurisdictions hold that it is not prejudicial error to mention in the instructions the amounts claimed as damages in the pleadings. The preferable practice, however, is to limit such comment and omit mention in the instructions of any specific dollar amount as may be claimed by the pleadings. The jury verdict must be based on the admissible evidence of the case and is not to be influenced by the exaggerated pleadings of the litigants.

■ It is charged as a specification of error that the jury misunderstood the evidence. In substantiation, MDU relies upon an affidavit of one of the jurors. The affidavit of a juror may not be used to impeach the verdict except when the verdict is arrived at by chance; nor may that affidavit be considered by the court as a ground for a new trial. Grenz v. Werre, 129 N.W.2d 681 (N.D.1964).

■ Defendants MDU, the City, and Igoe jointly participated in the selection of the trial jury in accordance with N.D.C. C. 28–14–05. All parties passed jury challenges, and the jury was accepted and impaneled. Before commencement of testimony, defendants City and Igoe settled their differences with the plaintiff, who gave them covenants not to sue. No claims then remained between the plaintiff and the settling defendants. Upon being notified of the settlement, the trial court, over defendant MDU's objection, severed defendants City and Igoe from this trial and ordered a separate trial of the issues raised by the various cross-complaints of the three defendants. The court, thereupon, fairly and adequately explained to the jury that defendants City and Igoe would not further appear in the trial; that this was a legal question for court decision; that the jury was not to speculate on the reasons therefor; and that they should decide the case on admissible evidence and the law, as given by the court.

Because of the joint selection of the jury by all three defendants, defendant MDU argues that it was deprived of several jurors through challenges exercised by the other two defendants, and thereby the fairness of the trial is in doubt. Only through this inference of unfairness does defendant MDU raise and attempt to substantiate its claim of prejudice preventing a fair trial resulting from the ruling of the trial court granting a severance of the City and Igoe from this trial.

The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice * * *.

N.D.R.Civ.P. 20(b).

The granting of separate trials under rule 20(b), above set forth, is discretionary with the court. Following settlement, no claim remained between the plaintiff and defendants City and Igoe, these defendants retaining an interest in the outcome of the lawsuit only because of cross-complaint indemnity claims asserted against them by defendant MDU. Under these circumstanc-

es, the trial court did not abuse its discretion in ordering the severance in question.

It is specified as error by the defendant that the trial court allegedly omitted discussion in its opinion of all issues raised by MDU on its motion for a new trial. This is not a statutory ground for a new trial. N.D.R.Civ.P. 59(b).

Causes enumerated by rule 59(b) as grounds for a new trial are exclusive. Meyer v. Robb, *supra*; Hamre v. Senger, 79 N.W.2d 41 (N.D.1956). This specified ground, not being a statutory cause for a new trial, accordingly is not tenable.

Finally, MDU attacks as excessive the verdict of $70,000 awarded by the jury as damages for the wrongful death of Mrs. Brauer.

No record was made of jury arguments. MDU contends, however, that the plaintiff's counsel, during argument to the jury, stated that $70,000 would be an adequate award for the wrongful death in question and then wrote this figure on a large sheet of paper which was visible to the jury. This is claimed as improper argument and prejudicial error.

It is not improper for counsel in jury argument to make reference, either orally or by printed placard, to a specific figure claimed as damages by a litigant, provided, of course, that the argument has some foundation in the evidence of the case. Teegarden v. Dahl, 138 N.W.2d 668 (N.D.1965); 88 C.J.S. Trial § 192, at 376 et seq. (1955); 53 Am.Jur. Trial Sec. 463, at 369 (1945). *Cf.* King v. Railway Express Agency, Inc., 107 N.W.2d 509 (N.D. 1961).

As further stated in *Teegarden:*

Counsel is allowed great latitude in presentation of argument, subject, however, to the regulation and control by the court whose duty it is to confine arguments within proper limitations. Where the argument is not made a part of the record, it must be presumed that the argument was within the record and proper inferences were drawn therefrom.

Teegarden v. Dahl, *supra*, 686.

We cannot hold on the basis of the record of this case that the argument of the plaintiff's attorney was strained beyond permissible limits, the presumption obtaining under the above authority that such argument and its inferences were proper.

No instruction was given in the charge to the jury on the present value of the verdict—that is, that the verdict be reduced to its present worth—and none was requested by the defendant. Pursuant to N.D.R.Civ.P. 51(c), before instructing the jury the trial court submitted proposed instructions to the respective counsel. Upon the trial court's requiring exceptions to the proposed instructions, the defendant did not note objection to the court's omission to instruct on present value, although exception to other parts of the instructions was taken. The defendant now submits that an instruction on present value should have been included in the trial court's instructions to the jury.

Those parts of the jury instructions not excepted to are the settled law of the case. No exception having been noted by the defendant to omission of an instruction on present value of the award, such omission cannot be raised as cause for a new trial on appeal to this court, there being no misdirection here in the trial court's instructions to the jury. Lembke v. Unke, 171 N. W.2d 837 (N.D.1969); Klokstad v. Ward, 131 N.W.2d 244 (N.D.1964); Geier v. Tjaden, 74 N.W.2d 361 (N.D.1955).

The defendant's specification of error that the verdict was excessive brings under examination the jury award of $70,000 for Mrs. Brauer's wrongful death.

In discussing damages for wrongful death under N.D.C.C. Sec. 32–21–02, this court, in Quam v. Wengert, 86 N.W.2d 741

(N.D.1957), employed the following language:

In an action brought under the provisions of this chapter, the jury shall give such damages as it finds proportionate to the injury resulting from death to the persons entitled to the recovery.

In Dahl v. North American Creameries, Inc., N.D., 61 N.W.2d 916, 922, this court held:

"The rights of action in such matters being entirely statutory, the statutory rule is the only measure of damages. Under the statute the amount of damages is left entirely with the jury except that the damages shall be proportionate to the injury resulting from the death of the person entitled to recover. In an action for damages for wrongful death it is the province of the jury, under proper instruction from the court, to determine the amount of the damages from the facts and circumstances of the case before it. The jury in fixing the damages has a wide range of discretion."

In Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897, 915, this court said:

"In actions for damages for wrongful death the jury is vested with a large discretion in fixing the amount of damages, * * * and while the discretion of the jury in such cases is subject to the supervision of the court, a verdict may be interfered with on the ground of excess only where it is manifest that the amount awarded is not within the evidence and was influenced by passion or prejudice. * * *"

Quam v. Wengert, *supra*, 752–753.

Very briefly summarized, the evidence in this case discloses that Mrs. Brauer at the time of her death was fifty-six years of age, in good health, and, among other things, had been and was attentive and active in the care and counseling of her husband, the keeping of his business records, the housekeeping of the home, and the tending of its incidental affairs. Mrs. Brauer left two surviving sons, both of whom had attained their majority.

Fabrizi v. Griffin, 162 F.Supp. 276 (W. D.Pa.1958) aff'd Fabrizi v. Kramer Bros. Freight Lines, Inc., 261 F.2d 594, in upholding a jury award of $65,120 for the pecuniary loss suffered by the surviving husband occasioned by loss of his wife's services, discussed the various factors of consideration in arriving at an adequate award for the wrongful death of a woman fifty-five years of age. While it must be borne in mind that each instance of wrongful death has differing factors and elements of pecuniary loss, nevertheless, the facts of *Fabrizi* are not dissimilar to those of the case at hand.

After considering the records of this case, it is concluded that credible evidence sustains the jury award for the wrongful death of Mrs. Brauer.

■ The one issue remaining undisposed is the plaintiff's cross-appeal from the district court order denying his motion for a new trial on his cause of action for the pain and suffering sustained by Mrs. Brauer from the date of the explosion until her death approximately six weeks later. On oral argument in this court, the plaintiff withdrew his cross-appeal. No prejudice appearing, the plaintiff's voluntary withdrawal of his cross-appeal is granted. 5 C.J.S. Appeal & Error § 1350, at 399 (1958).

The judgments and orders of the district court are affirmed.

STRUTZ, C. J., and TEIGEN, ERICKSTAD and KNUDSON, JJ., concur.

WM. L. PAULSON, J., deeming himself disqualified did not participate; DOUGLAS B. HEEN, District Judge of the Second Judicial District, sitting in his stead.