ELLEN AND PATRICK A. HUGHES v. CITY OF DULUTH.[1]

October 14, 1938.

Nos. 31,755, 31,756.

[1]Reported in 281 N. W. 871.

*Harry E. Weinberg* and *Robert Jaques,* for appellant.
*Arthur R. Smythe* and *Henry G. Middaugh,* for respondents.

LORING, JUSTICE.

Plaintiffs had verdicts in these two actions, which were tried together. The plaintiff Ellen Hughes is the wife of the plaintiff Patrick, and she brought suit for personal injuries resulting from a dynamite explosion which occurred in connection with blasting operations in street improvements adjacent to her home. Patrick sued for loss of his wife's services and companionship, for medical and hospital care, and also for damages to his house. The first trial of the actions resulted in directed verdicts in favor of the defendant. New trials were granted exclusively on the ground of error of law in granting defendant's motion for directed verdicts. No appeal was taken from this order, and the second trial resulted in a verdict of $7,000 in favor of Ellen and $3,053 in favor of Patrick. The city moved for judgments notwithstanding the verdicts or for a new trial, and these appeals were taken from the judgments entered after the denial of the motion. The blasting complained of was being done by workmen who were paid with the funds of the Works Progress Administration under an allotment made for the project by the federal government.

Two questions are raised by this appeal. The first is whether the city is liable for the negligent acts of these workmen, and the second is whether the verdicts are so excessive as to indicate passion or prejudice on the part of the jury.

No question is raised here as to the sufficiency of the evidence to support the jury's findings that the workmen were negligent in their blasting operations. The trial court charged the jury:

"Did the defendant city of Duluth have such a measure or degree of control over the men doing the work and over the materials and instrumentalities used in doing the work and over the work as a whole which was being done on West Ninth street immediately in

front of and near the Hughes home, that it was responsible for the negligence which the plaintiffs claim resulted in injuries and damages to plaintiffs?"

Under the Emergency Relief Act of 1935 (49 St. 115), the city of Duluth requested, and was granted, an allotment of funds from the federal government for the improvement of its streets, the work to be superintended by its superintendent of maintenance; the contributions to be available for the prosecution of the project as needed. Of course there was no contract between the federal government or any of its agencies and the city of Duluth for the purpose of improving its streets. The contribution of the federal government to the general project was to be in excess of $200,000 and that of the city of Duluth slightly in excess of $200. Stated concisely, the federal government was interested in relieving unemployment, and allotted funds to the city of Duluth, which was interested in getting its streets improved with the contributions of federal money. Upon the request of the city's superintendent of maintenance, the WPA sent men to this Ninth street job, which was a part of the project for which federal funds were contributed. Construing the evidence most favorably to the plaintiffs, these men could have been accepted or rejected by the city's superintendent or foreman. While no one could work on the job except the men sent by the WPA, everyone sent need not be accepted or might later be rejected by those in charge of the work. As said by the trial court, the WPA was, in respect to the furnishing of these men, a sort of employment agency for the city.

Under these circumstances, we are convinced that the jury was justified in finding that the work was being conducted by the city and that the men sent there to perform labor were so far under its control as to be considered for the time being, at least, employes of the city. Indeed the evidence would have justified that conclusion as a matter of law. Even if these men were to be considered as employes of the government, a conclusion which the record wholly fails to justify, they were in the status of servants lent by their general employer to the city with their consent, and

the city was for the time being their master, for it had the power of control which is the test of liability under the maxim *respondeat superior*.

The appellant relies heavily upon the cases of Todaro v. City of Shreveport, 187 La. 68, 170 So. 356, 174 So. 111; State ex rel. State Board v. Industrial Comm. 5 Nev. 343, 34 P. (2d) 408; Hoover v. Independent School Dist. 220 Iowa, 1364, 264 N. W. 611; Shelton v. City of Greeneville, 169 Tenn. 366, 87 S. W. (2d) 1016; and Brooks v. City of Seattle, 193 Wash. 253, 74 P. (2d) 1008. In the Nevada case the relief workers were held to have had no master because they were provided with work because of their need of means of support, and they were not paid as a contractual obligation for their work but as relief of themselves and their families. It was held that they were not within the protection of the Nevada industrial insurance act. In the Louisiana case the CWA had an independent contract with the city, and its workmen were employed, paid, and discharged by the CWA through its proper authorities and the city had no authority to select the personnel nor to discharge any person sent to the job. It was there held that the element of control by the city was absent. In the Seattle case the plaintiff's deceased husband was in the employ of the Civil Works Administration and came within the federal employes compensation act, and it was held that the federal administration and not the city was conducting the project. In the Tennessee case the workman was, under the Tennessee Emergency Relief Administration, seeking liability on the part of the city under the compensation statute. It was held that the city was not prosecuting the work. The Iowa case was under the compensation act and brought upon the theory of a loaned employe who was held to be excluded from the Iowa act. In Oklahoma City v. Caple, 178 Okl. 296, 62 P. (2d) 1025, it was held that the evidence did not justify a holding as a matter of law that the defendant actually supervised and controlled the employes engaged on the project, the inference being that if there were evidence of city control the case would be for the jury.

The second point raised by the city is the question of the excessiveness of the verdicts. In a case like this where there is an absence of objective symptoms and the injured person has been before the trial court for several days, the question of excessiveness is peculiarly one for that court, and we are very reluctant in such cases to disturb the judgment of the trial court. A careful examination of the record does not convince us that we should do so in this case.

The judgments appealed from are affirmed.

