FLOYD DeVRIES v. CITY OF AUSTIN AND OTHERS.
SEABOARD SURETY COMPANY, THIRD-PARTY DEFENDANT.
JORDAN BUILDERS, INC., AND OTHERS, APPELLANTS.

110 N. W. (2d) 529.

September 8, 1961—Nos. 37,983, 38,005, 38,115, 38,338.

---

*Kenneth K. McMillan* and *Baudler & Baudler,* for plaintiff.
*Mahoney & Mahoney* and *Harry H. Peterson,* for city of Austin.
*Elmer R. Peterson* and *John R. Peterson,* for the board.
*Tyrrell, Jardine, Logan & O'Brien,* for Thompson & Lewison.
*Alderson, Catherwood, Kelley & Ondov,* for Jordan Builders, Inc.
*William J. Nierengarten,* for Jordan Builders, Inc., on cross-claim of city.

THOMAS GALLAGHER, JUSTICE.

Floyd DeVries brought this action against the city of Austin, hereafter referred to as the city; the Board of Water, Electric, Gas and Power of Austin, hereafter referred to as the board; Jordan Builders, Inc., hereafter referred to as Jordan; and Thompson and Lewison, a copartnership, hereafter referred to as Thompson, on the ground that their negligence in excavating a trench for curb and gutter on the street in front of plaintiff's residence in Austin damaged the gas service line so that gas escaping therefrom exploded in such residence, completely destroying it and its contents. The jury returned a special verdict finding against all defendants except Thompson and assessing damages in the sum of $21,000, which was reduced by the court to $20,741.

On April 10, 1958, Jordan entered into a contract with the city for

installation of curbs and gutter in front of plaintiff's residence. Thereunder, Jordan was to furnish the labor and material required and to give personal and direct attention to the work. The contract provided:

"The Contractor undertakes to indemnify and save harmless the City, and for or on account of the City to make defense against all claims for damages to persons or to property alleged to have been caused through the negligent performance of any part of the work herein, whether such default be asserted to have been in the performance of a duty of employees, to the owners of property or to the members of the public.

\* \* \* \* \*

"The Contractor shall be responsible to the City for the acts and omissions of all persons, firms or corporations directly or indirectly employed by him in connection with the work."

It also provided:

"The City shall have the right to control every detail of the work, whether performed by the Contractor or by a Subcontractor, and shall have the right to require the Contractor to discharge any employee on the work whom it may deem objectionable."

The specifications accompanying and incorporated into the contract included the following special provision: "The City Engineer will provide and set survey stakes for line and grade." One of the general specifications provided in part:

"The Contractor shall preserve and protect all properties of public utility companies or municipalities, such as pole lines, conduits, gas or water pipes, sewers and tile lines which run over, through, or under any part of the right of way. The Engineer shall cooperate in locating the above mentioned properties, but it shall be the responsibility of the Contractor to contact the various public utility companies and municipalities and locate their properties before construction shall commence in that locality, and he shall assume full responsibility for reimbursing the owners thereof for any damage or injury to such properties which may be caused by his operation."

Pursuant to the laws of Minnesota[1] and the charter of the city of Austin,[2] at the time the contract was executed Jordan executed and delivered a bond to the city for its use and the use of "all persons doing work or furnishing tools, skill, machinery or materials under or for the purpose of this contract." This bond provided:

"The bondsmen shall be liable for all damages resulting from any failure of the principal * * *. Any person showing himself injured by such failure may maintain an action upon this bond in his own name * * *.

"* * * If said Principal shall faithfully perform said contract and pay all damages which may accrue by reason of the failure to *complete the work in accordance with the contract,* and shall pay * * * all just

---

[1]Minn. St. 574.26 provides: "No contract * * * with any municipal corporation * * * for the doing of any public work, shall be valid * * * unless the contractor shall give bond * * * for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery, or materials or insurance premiums or equipment or supplies * * * conditioned for the payment * * * of all just claims for such work, tools, machinery, skill, materials, insurance premiums, equipment, and supplies for the completion of the contract in accordance with its terms, for saving the obligee harmless from all costs and charges that may accrue on account of the doing of the work specified, * * *."

[2]Austin City Charter, c. 8, § 22, provides in part: "Upon the acceptance of any bid by the common council, the successful bidder shall be immediately notified thereof by the city recorder, and there shall be prepared by, or under the direction of the city attorney, a contract to be made and executed by the successful bidder, and the mayor and recorder on behalf of said city, reciting the terms and conditions for the performance of such work and improvement, and the successful contractor shall also be required to give a bond, conditioned for the faithful performance of his contract and such other conditions as the common council may require, and upon the execution of such contract by the contractor, and after authority duly granted by resolution duly passed and approved by the council, the mayor and city recorder shall execute said contract on behalf of said city. In case any person or persons with whom such contract has been made shall fail or neglect to complete the same within the time and in the manner prescribed, the common council may, at any time after such default, in its discretion and at its election, * * * cause action to be brought for the recovery of the amount thereof on account of such default * * *."

claims to all persons doing work or furnishing skill, tools, or materials or insurance premiums or equipment and supplies for the completion of said contract * * * and in case the Principal saves the City of Austin harmless from all costs and charges that may accrue on account of the doing of the work specified in the contract * * * then this bond shall be void; otherwise to remain in full force and affect."

The contract contained the further provision that:

"* * * The Contractor shall take out and maintain during the life of this contract such public liability and property damage insurance as shall protect the City, himself, and any subcontractor performing work covered by this contract from claims for personal injury, including accidental death, as well as claims for property damages, which may arise from operations under this contract, whether such operations be by himself, or by a subcontractor, or by anyone directly or indirectly employed by either of them, and the amount of insurance shall be as follows:

"Public liability insurance in an amount of not less than $25,000 for injuries * * * and property damage in an amount not less than $5,000."

It is not disputed that such liability insurance was furnished the city by Jordan. In the performance of the contract, Jordan entered into an arrangement with Thompson, under which the latter would furnish an excavating device known as a "backhoe" together with an employee of Thompson by the name of Albert Sauer who would operate the "backhoe" and do the excavation required under the contract. Jordan agreed to pay Thompson therefor on an hourly basis. The board, as an independent subsidiary of the city, operated, controlled, and supervised the Austin gas system and maintained the equipment and pipes required therein.

When summons was first served upon the city, it tendered defense of the action to Jordan and its surety, Seaboard Surety Company, under the contract and bond described. The latter both declined to assume such defense. Thereafter, the city interposed a separate answer to the complaint denying that it was negligent; and interposed a third-party complaint against Seaboard Surety Company as third-party defendant based on the claim that any liability of the city arising out of Jordan's

negligence was covered under the bond. The surety company answered, denying negligence on the part of Jordan; denying that the bond covered damages occasioned by negligence of others than Jordan; and alleging that since the damages resulted from the city's negligence they would not be covered by the bond in any event.

The city also interposed a cross-claim against Jordan based on the ground that if the city were held liable to plaintiff because of Jordan's negligence or failure to perform the contract it was entitled to indemnity therefor from Jordan under the indemnity provisions of the contract. Jordan in its separate answer to the complaint denied that it was negligent in the performance of the contract. It further interposed a cross-claim against the city, the board, and Thompson, alleging that, if plaintiff recovered, Jordan was entitled to indemnity from each of the city, the board, and Thompson on the ground that it was their concurrent negligence which had caused the damage. The city and the board interposed separate answers to this cross-claim, wherein they each denied any negligence in the performance of the contract.

The evidence disclosed that on the street where the excavation was to take place gas service lines extended from the main gas line to the residences thereon. These were indicated by vents just above the surface on each residence. It further disclosed that immediately prior to the accident Sauer had been operating the "backhoe" pursuant to signals and directions as to the depth of the trench given to him by Ernest Anthony, an employee of Jordan, because Sauer from his seat on the "backhoe" could not ascertain the depth to which he was digging and relied upon Anthony to direct him with reference thereto. The evidence also disclosed that Anthony had no knowledge as to the exact depth of the gas service lines below the surface and had been instructed by the Jordan foreman to dig down below the surface of the street opposite the vent on each residence; that Anthony had a spade which he could have used for this purpose but did not carry out such instructions; and that he could have ascertained the depth of such service line, which was apparently about 30 inches below the surface, had he followed such instructions.

While excavating the trench in front of plaintiff's residence, the "backhoe" operated by Sauer came in contact with the service line lead-

ing to plaintiff's residence and wrenched it free from a gas meter therein causing gas to escape in the basement and the explosion and fire which destroyed plaintiff's house and its contents shortly thereafter.

As indicated above the jury found all defendants negligent except Thompson. Based thereon, the court made findings and conclusions determining that the city was not entitled to indemnity from the contractor or from Seaboard Surety Company. It also dismissed Jordan's cross-claim against the city, the board, and Thompson.

On appeal the contentions of the various parties may be summarized as follows: The city contends that it was not negligent as a matter of law; that if it is liable to plaintiff it is entitled to indemnity from Jordan therefor and for its expenses in defending the action; and that Seaboard Surety Company is liable to it for indemnity up to the face amount of its bond.

Jordan contends that it was free from negligence as a matter of law; that the negligence arose out of either the actions of Sauer who was the employee of Thompson or the actions of the city in failing to furnish adequate information to it as to the depths of the gas service lines and in setting the stakes indicating the depths at which the excavations should be made. It also contends that the board was negligent in failing to keep accurate records and in failing to have an employee present to shut off the gas in case a line was broken during the course of the excavation.

The board contends that it was free from negligence as a matter of law.

Plaintiff contends that the board was negligent in not furnishing adequate protection while the work was in progress when it was aware that the excavation would come close to the service lines and that such service lines had been broken during the progress of similar work on previous occasions; that Jordan was negligent in failing to locate the gas service lines prior to excavating; and that the city was liable because of its overall responsibility to adjacent property owners for the exercise of reasonable care in the maintenance of the gas lines.

■ We are of the opinion that the evidence is sufficient to support a finding that Jordan's negligence was a proximate cause of plaintiff's damages. The specifications and the contract placed full responsibility

upon it for locating and protecting the gas pipes under the right-of-way prior to the commencement of the excavation. They required the city engineer to cooperate with Jordan therein, but regardless of this, they definitely placed final responsibility for locating the lines upon Jordan and required that the latter contact the municipality and the board to learn the exact location of such facilities. Jordan was aware that only by digging below the surface could the exact location of the lines be ascertained. Its failure in this respect clearly establishes its liability as to third parties injured as a result of such negligence even though not a party to the contract. La Mourea v. Rhude, 209 Minn. 53, 295 N. W. 304; McClare v. Massachusetts Bonding & Ins. Co. 266 N. Y. 371, 195 N. E. 15; 4 Dunnell, Dig. (3 ed.) § 1896. Separate and apart from its contractual obligation, a common-law duty rested upon it to exercise reasonable care not to injure adjacent property owners while in the performance of the contract. That it failed in this respect cannot be disputed. Just prior to the accident, its employee, Ernest Anthony, who had direct supervision of the work being performed by Sauer in the operation of the "backhoe," had been instructed to dig below the surface to ascertain the location of the lines. He disobeyed the instructions and gave directions and signals to indicate the depth of the excavation to Sauer as the latter proceeded with the work. Sauer had no other means of determining how deep the excavation should be and subjected himself completely to Anthony's directions with reference thereto. Clearly the actions of Anthony as described would support a finding of negligence proximately causing plaintiff's damages, and Jordan's liability therefor. Goar v. Village of Stephen, 157 Minn. 228, 196 N. W. 171; Ehret v. Village of Scarsdale, 269 N. Y. 198, 199 N. E. 56. In Hersum v. Kennebec Water Dist. 151 Me. 256, 268, 117 A. (2d) 334, 340, 53 A. L. R. (2d) 1072, 1081, the court stated:

"We think the referees upon this evidence could further find negligence on the part of the defendant in permitting the gas service pipe to be forcibly struck and bent by the power shovel."

■ It seems clear that the city is liable to plaintiff for the negligence of Jordan whether the latter be held an independent contractor or an

agent of the city. Under the contract the city definitely reserved to itself the right to control every detail of the work whether performed by Jordan or by a subcontractor as well as the right to discharge any employee on the work. Its engineer was to cooperate with Jordan in locating the gas service lines and to furnish necessary survey stakes showing the direction and depth of the excavations. Such reservations of control, whether exercised or not,[3] quite definitely spelled out the city's responsibility to plaintiff for the performance of the contract with reasonable care to avoid damage to the latter's property. Hughes v. City of Duluth, 204 Minn. 1, 281 N. W. 871; Hoffman v. City of St. Paul, 187 Minn. 320, 245 N. W. 373, 86 A. L. R. 198.

■ Of course the city's liability to plaintiff would not lessen Jordan's ultimate contractual responsibility to indemnify the city on its liability to plaintiff for damages arising out of Jordan's failure to locate the gas service lines prior to commencement of the excavation. This obligation was imposed upon Jordan by the city and when considered with the quoted indemnity provisions in the contract would definitely establish the city's right to be indemnified by Jordan for such damages adjudged due from it to plaintiff arising out of the explosion, as well as for its expenses in defending the action after Jordan had refused to do so. The language of the indemnity clause in the contract as above set forth makes this conclusion inescapable.

This case does not fall within the rule against indemnity between joint tortfeasors, 9 Dunnell, Dig. (3 ed.) § 4342, or the rule against indemnity where a municipality's negligence arises out of its own acts or omissions and not by virtue of the doctrine of respondeat superior.

---

[3]Hughes v. City of Duluth, 204 Minn. 1, 281 N. W. 871, 120 A. L. R. 1144. In Herron v. Coolsaet Bros. 158 Minn. 522, 527, 198 N. W. 134, 136, this court stated: "The degree to which direction and control is exercised is not so important as the manifest right to direct and control where controversy may arise." In Strohmaier v. Wisconsin Gas & Elec. Co. 214 Wis. 564, 253 N. W. 798, and Trotter v. McLennan County Water C. & I. Dist. No. 1 (Tex. Civ. App.) 252 S. W. (2d) 734, defendants, a municipality and an equivalent, were held not liable for the negligence of their independent contractors because defendants had exercised no power or control over them in the performance of the contracts.

McDonald v. Western Union Tel. Co. Inc. 250 Minn. 406, 84 N. W. (2d) 630. The city's responsibility to plaintiff arises out of its vicarious liability for Jordan's active negligence under the doctrine of respondeat superior. Hanson v. Bailey, 249 Minn. 495, 83 N. W. (2d) 252. But even if it were held that the city's actions in setting the stakes and specifying the depth of the excavation constituted a lack of due care in so far as plaintiff is concerned, this would not absolve Jordan of its contractual obligation to indemnify the city on its liability to plaintiff arising out of Jordan's failure to fulfill its responsibility of locating the gas service lines. Fidelity & Cas. Co. v. Northwestern Tel. Exch. Co. 140 Minn. 229, 167 N. W. 800. Nor would the fact that George E. Bagley, a city employee whose duties related to cement inspection and who visited the project on two occasions, expressed a personal belief that the gas service lines were below the depth of the required excavation shift this responsibility from Jordan. Bagley's statements were not within the scope of his duties and were unauthorized by the city. 63 C. J. S., Municipal Corporations, §§ 1190, 1193. His expression of a personal opinion would in no respect be binding upon the city, particularly where the latter had specified that Jordan was to ascertain the location of the lines. There was nothing in the conduct or actions of the city or its employees which would shift this responsibility from Jordan or constitute a bar to the city's right to indemnity. As stated in Lawrence v. G. N. Ry. Co. (D. Minn.) 109 F. Supp. 552, 555:

"* * * the Minnesota rule of contribution as between joint tortfeasors does not negative the principle of indemnity on other grounds. That is, where the parties are not *in pari delicto* and the injury results from the acts of one whose negligence is the *primary, dominant* cause of the injury, and * * * such negligence exposes another to liability, the former is liable to the latter in the full amount of the damages incurred by such act." (Italics supplied.)

Minneapolis Mill Co. v. Wheeler, 31 Minn. 121, 16 N. W. 698; Fidelity & Cas. Co. v. Northwestern Tel. Exch. Co. 140 Minn. 229, 167 N. W. 800. The foregoing rule was cited with approval on appeal of the Lawrence case. Waylander-Peterson Co. v. G. N. Ry. Co. (8 Cir.) 201 F. (2d) 408, 37 A. L. R. (2d) 1399.

■ It is contended by Jordan that the board[4] was negligent because it did not keep accurate records as to the depth of its various gas service lines throughout the city so that it could not furnish Jordan accurate information with reference thereto when requested; and because, although aware that Jordan would be excavating dangerously close to its service lines without such information with the attendant risk that the lines might be severed as had happened on previous occasions, it failed to have an employee present to cut off the gas if necessary.

The obligations resting upon the board are identical to those of a private utility company operating under a municipal franchise. Gould v. Winona Gas Co. 100 Minn. 258, 111 N. W. 254, 10 L.R.A. (N.S.) 889; Fabbrizi v. Village of Hibbing, 242 Minn. 464, 66 N. W. (2d) 7. Thereunder it is required to exercise due care to prevent the escape of gas proportionate to the danger which it is its duty to avoid, Manning v. St. Paul Gaslight Co. 129 Minn. 55, 151 N. W. 423, L.R.A. 1915E, 1022; Bellefuil v. Willmar Gas Co. Inc. 243 Minn. 123, 66 N. W. (2d) 779; and its obligation in this respect extends to the protection of property adjacent to its lines.

Under this rule we do not believe that it could be said that the board was negligent in not keeping records showing the exact depth of its service lines. It maintains service for 7,500 customers and it was shown that there was no practical way of ascertaining grade changes in yards or streets where its service lines were laid; that most of such lines were installed before the grading of the yards was completed and when the ultimate grade thereof was unknown; that no ordinance or charter provisions required a specific minimum depth for service lines;[5] and that changes in street grades and surfaces constantly taking place would make any such records confusing, inaccurate, and worthless. We are

---

[4]The board, which derives its powers from the city under the charter, has charge of the water, electrical, and gas systems of the city, and is responsible for the installation and maintenance of the necessary lines and equipment required in connection therewith. See, Austin City Charter, c. 11, §§ 1 and 3. It may sue and be sued, appear, and prosecute actions to final judgment in any court in its own name; c. 11, §2.

[5]Rauch v. Southern Calif. Gas Co. 96 Cal. App. 250, 273 P. 1111, where ordinance required maps to be filed showing location of gas lines.

satisfied that it would be imposing too great a burden and expense upon the board to require that it maintain accurate records as to the exact depth of each of some 7,500 gas service lines throughout the city, notwithstanding frequent changes in street grades and levels made from time to time which would necessitate constant vigilance on its part to determine whether to modify its records to reflect such changes.[6]

■ Likewise, it would be unreasonable to hold that the board has the obligation of ascertaining when any construction project which might be in proximity to its lines has been ordered or is about to commence and to have available at any and all of such projects sufficient employees to guard against damage to or severance of such lines. In Willmar Gas Co. v. Duininck, 239 Minn. 173, 179, 58 N. W. (2d) 197, 200, with reference to the responsibilities as between a gas distributor and a contractor, we stated:

"* * * it would be unreasonable to charge plaintiff [the gas company] with the duty of constantly watching the operations over which it had no control to ascertain, at its peril, when defendants [contractors] intended to proceed with such work as might damage its service lines. Rather, the duty should rest upon defendants to notify plaintiff when they intended to proceed with the work and to ascertain whether service lines of plaintiff were located in such places that they might be damaged if defendants proceeded with the work. * * * It would place an unreasonable burden upon plaintiff were we to require it to follow all stages of a street improvement project and to constantly follow the equipment of a contractor doing such work to see that none of its lines were damaged."

While the instant case relates to the board's obligations to plaintiff as an adjacent property owner, as well as to Jordan, the contractor, it would seem reasonable to apply the foregoing principles to both. The duty rested upon Jordan to contact the board and ascertain the depth

---

[6]In Willmar Gas Co. Inc. v. Duininck, 239 Minn. 173, 58 N. W. (2d) 197, which involved a suit by a gas distributor against a contractor for damage occasioned by the contractor's severance of the distributor's gas line, we held contributory negligence did not arise because of plaintiff's failure to furnish defendant with plats or maps of plaintiff's service lines.

and locations of the gas service lines. The board advised Jordan's foreman that it had no accurate records with such information and that the only way of determining the depth was for Jordan's employee to dig below the street surface at points opposite the vents on the houses on this street. Had these instructions been followed, there would have been no difficulty. To hold that under these circumstances additional obligations rested upon the board would impose the obligation upon gas distributors and municipalities engaged in the furnishing of gas to consumers to retain a staff of employees to check construction projects constantly and to be present at all times during the progress thereof; to dig below the street to ascertain the depth of the service lines; to advise the contractors with respect thereto; and to be constantly prepared to cut off the gas in the event such lines were severed or damaged. To burden a gas distributor with such responsibilities would to all intents and purposes make it an insurer of the safety of its operations, contra to Gould v. Winona Gas Co. 100 Minn. 258, 111 N. W. 254, 10 L.R.A. (N.S.) 889.

■ We are of the opinion that the trial court was correct in dismissing the city's cross-claim against Seaboard Surety Company as surety upon a public contractor's bond furnished to the city by Jordan pursuant to Minn. St. 574.26 and to an ordinance of the city to assure the faithful performance of the contract. It is clear from the provisions of § 574.26 and the ordinance as above quoted as well as from the language of the bond and the contract that the purpose of the bond was not to protect the obligee therein against liability for damages arising because of negligence in the contractor's performance of the work. That the statutory bond was not intended to cover liability for negligence is manifested by our decision in Kunz Ins. Agency v. Phillips, 191 Minn. 626, 255 N. W. 90, which held that such a bond would not even extend to payment of insurance premiums for public liability, property damage, and collision insurance. There, this court stated (191 Minn. 627, 255 N. W. 91):

"* * * The purpose of the bond is to protect those furnishing labor and material used in the performance of the contract. * * * The insurance here involved is for the contractor's own protection. It is readily

distinguished from workmen's compensation insurance to protect workmen, which the law requires."

Further, it is obvious that, if the bond here was intended to cover the obligee's liability for the contractor's negligence in the performance of the work, the contract provisions requiring him to furnish liability insurance covering such negligence for the city's protection would not have been added.

Reversed and remanded for further proceedings in accordance with this opinion.