H.J. KRAMER PLUMBING & HEATING, INC., Respondent,

v.

Ralph A. SCHARMER, et al., Appellants.

No. C1–85–1564.

Court of Appeals of Minnesota.

April 29, 1986.

William A. Lindquist, Winona, for respondent.

Stephen A. Libera, Winona, for appellants.

Heard, considered and decided by RANDALL, P.J., and PARKER and FOLEY, JJ.

## OPINION

RANDALL, Judge.

Ralph A. Scharmer & Sons, Inc. and Ralph A. Scharmer appeal from a judgment entered against them by the trial court on July 1, 1985. The trial court judgment reformed the contract between appellants and respondent, H.J. Kramer Plumbing and Heating (Kramer), a subcontractor, to ex-

clude construction of the lift station building for the Enterprise Rest Area being constructed by appellant under the terms of a government contract. The court found the written contract between Kramer and Scharmer Construction contained no term requiring respondent to pay a bond fee. The court assessed prejudgment interest under Minn.Stat. § 549.09, subd. 1(c) (1984), on the amount due from April 26, 1979, the day Kramer demanded payment.

Appellants did not move for amended findings or a new trial. After appellants filed this appeal, respondent moved to dismiss, stating as grounds that appellants' statement of facts "does not include evidence tending to support the judgment or a single transcript reference, as required by Minn.R.Civ.App.P. 128.02, subd. 1(c)." This court denied respondent's motion, finding the motion to dismiss improper because appellants' brief was timely filed.

## FACTS

Ralph A. Scharmer is a masonry contractor and owner of Ralph A. Scharmer & Sons, Inc. (Scharmer Construction). Henry Scharmer, Ralph Scharmer's brother, negotiated with Robert Heftman, then an employee of Kramer, the terms of the contract at issue here. Henry Scharmer owns Winona Excavating Company. David Scharmer is an officer of Scharmer Construction and is the son of Ralph Scharmer.

On February 23, 1977, Scharmer Construction entered into a contract with the State of Minnesota to construct an "Enterprise Rest Area" near Lewiston in Winona County. The job consisted of constructing a building and sewage disposal system, and developing the site. Scharmer Construction subcontracted out the excavating, plumbing, electric, heating, and ventilation work.

Kramer submitted a telephoned bid for the sewage disposal system, known as Item 31 of the contract. Scharmer initially rejected Kramer's bid because it was not the lowest bid. Scharmer acknowledges receiving the telephone bid, but was unable to produce his written record of the bid at trial. Each of the three bids Scharmer received for the sewage disposal system, including Kramer's, expressly excluded construction of the lift station building. None included an express term for a performance bond.

Early in 1977, a chance meeting between Hubert Kramer, president of Kramer Plumbing, and Ralph Scharmer occurred at a local restaurant. Scharmer told Kramer that negotiations with the company to which the sewage disposal contract had been awarded had been unsuccessful and that Kramer could still get the contract. Ralph Scharmer told Kramer to resubmit a bid, which would include all work inside the lift station. The trial court found that no contract was formed at this meeting.

The court found that Ralph Scharmer asked Henry Scharmer to coordinate subcontracting of the sewage disposal system because Ralph ran into difficulties and had underestimated the cost of construction of the sewage disposal system.

The trial court also found that Robert Heftman, a Kramer employee, met on at least one occasion with Henry Scharmer to negotiate the terms of the contract. During that meeting, Heftman told Scharmer that the Kramer bid excluded construction of the lift station. The trial court found that an agreement was formed during this meeting. That agreement excluded construction of the lift station building. Heftman drafted a contract expressing the agreement and presented it to Ralph Scharmer for final approval.

The written contract, formed by formal acceptance of the Kramer bid, reads as follows:

| | |
|---|---|
| Section 60–All Plumbing Work | $23,300.00 |
| Section 64–Water Supply System | $16,000.00 |
| Section 65–Site Irrigation System | $ 7,000.00 |
| Item No. 31 Sewage Disposal System | $45,256.00 |
| Electrical included in above as per specification and backhoe as agreed | $91,556.00 |

WE PROPOSE hereby to furnish material and labor—complete in accordance with above specifications, for the sum of: Ninety One Thousand Five Hundred Fifty Six Dollars ($91,556.00)

This contract was formed by Ralph Scharmer's signature at a place on the bid form, indicating that he accepted the Kramer bid and authorized Kramer to begin the work. Appellant and respondent did not review the contract together. The underlined portion of the contract, pertaining to the electrical work, was added to the typed bid by Ralph Scharmer. The trial court found that the "Sewage Disposal System," term of the contract, Item 31, mistakenly failed to specifically exclude construction of the lift station. "Item 31" refers to a portion of the Department of Transportation contract with Scharmer Construction. In their oral negotiations, the parties agreed that not all Item 31 work was to be done by Kramer. Respondent contends, and the trial court found, that the parties did not intend for Kramer to construct the lift station building. Scharmer Construction disputes this finding.

During construction of the Enterprise Rest Area, the State expressed to David Scharmer its concern that the project might be in jeopardy because the lift station had not been constructed. Scharmer Construction did not request or demand that Kramer construct the station and Scharmer Construction built the lift station building.

The cost of constructing the lift station building was $7,000. Scharmer Construction withheld the entire final contract payment of $12,784.37 due Kramer, $7,000 for construction of the lift station and $915.56 for a performance bond. Scharmer concedes that he owes Kramer $4,868.81 of the final payment. Scharmer Construction testified at trial that industry custom dictates a one percent surcharge for a performance bond on all contracts.

Kramer first learned of Scharmer Construction's claim that Kramer was responsible for constructing the lift station two years after the project was completed, during the final accounting in April, 1979, which revealed that $4,868.81 was due from Scharmer Construction to Kramer.

Kramer began suit January 6, 1981, to collect the balance due. The trial court awarded Kramer a judgment of $12,784.37, which included the total due, $4,868.81, the $7,000 Scharmer Construction withheld for the construction of the lift station, $915.56 withheld by Scharmer Construction for the bond, plus prejudgment interest from April 26, 1979, the day Kramer demanded payment.

## ISSUES

1. Did the trial court properly reform the parties' contract to exclude construction of the lift station building?

2. Did the trial court properly find respondent was not obligated to pay appellant a performance bond premium?

3. Did the trial court properly compute prejudgment interest under Minn.Stat. § 549.09 (1984)?

## ANALYSIS

### I.

*Standard of Review*

Appellants appealed from the judgment entered after trial and did not move for a new trial. Under these circumstances, our scope of review is limited to determining "whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment." *Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). The purpose of a motion for a new trial is to permit the correction of errors by the trial court before automatically incurring the expense and inconvenience associated with an appeal. *Pierce v. National Farmers Union Property & Casualty Co.,* 351 N.W.2d 366, 368 (Minn.Ct.App.1984).

Thus, this court is limited to deciding whether the evidence sustains (1) the trial court's reformation of the contract, (2) the trial court's finding that there is no industry practice of general contractors charging subcontractors bond premiums in the absence of an express contract provision providing such bond payments, and (3) prejudgment interest as assessed by the trial court.

This court reviewed a trial court's reformation of a deed where appellant had made no motion for a new trial in *Owatonna Country Club, Inc. v. Kohlmier*, 353 N.W.2d 227 (Minn.Ct.App.1984). On review we examined the evidence and found there was "more than enough evidence to support the trial court's finding." *Id.* at 230. Although the court briefly examined the elements of reformation, it analyzed them in light of the "supported by the evidence" standard, not the "clear and consistent, unequivocal and convincing" standard of *Nichols.* By failing to move for a new trial, appellant has limited our scope of review to whether the trial court's findings are supported by the evidence.

*Interpretation of the Written Contract*

A written instrument may be reformed if:

(1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

*Nichols v. Shelard National Bank*, 294 N.W.2d 730, 734 (Minn.1980). "These facts must be established by evidence which is clear and consistent, unequivocal and convincing." *Id.*

The portion of the contract in dispute reads simply, "Item No. 31 Sewage Disposal System." There is no elaboration in the written contract as to what this language encompasses.

Appellants claim the trial court erred in reforming the written contract to exclude Kramer's construction of the lift station. Appellants also claim the court's finding no. 9, that no contract was formed between Kramer and Ralph Scharmer at a local restaurant, and finding no. 11, that Heftman and Henry Scharmer reached an agreement following negotiations subsequent to the restaurant meeting, do not explain how a valid agreement was formed between Scharmer Construction and Kramer. Appellants also claim that since Ralph Scharmer had no knowledge of these nego-

tiations, he cannot be bound to the terms of the contract. They contend that if no valid contract was formed, the court could not properly reform it.

■ We hold that the agreement between Heftman and Henry Scharmer, together with the signed, accepted bid sheet, form a valid, binding contract. The trial court found that Henry Scharmer was acting as Scharmer Construction's agent during the negotiations. Henry Scharmer informed Kramer, prior to negotiations, that Henry was acting on Scharmer Construction's behalf in negotiating with Kramer.

This evidence is sufficient to support the court's finding that Henry Scharmer was negotiating on Scharmer Construction's behalf, as his agent, with Kramer. The trial properly imputed knowledge to Scharmer Construction. Appellants raise no other arguments to attack the validity of the contract.

■ Appellants next argue that the contract cannot be reformed because evidence does not support the finding by the trial court that there existed a mutual mistake in the contract. In order to find mutual mistake, "it is necessary that both parties agree as to the content of the document but that somehow through a scrivener's error the document does not reflect that agreement." *Nichols*, 294 N.W.2d at 734.

Here the court did not find a scrivener's error, but rather admitted parol evidence to supplement the terms of the contract, finding the contract contained a latent ambiguity in the term "Item No. 31 Sewage Disposal System." Once the court admitted the parol evidence, it "reformed" the contract to reflect what it found the parties had agreed to, namely that Kramer's bid and the contract did not include construction of the lift station building. Appellants claim the court improperly admitted the parol evidence because the contract is unambiguous.

■ Parol evidence is admissible "when the written agreement is incomplete or ambiguous." *Baker v. Citizens State Bank of St. Louis Park*, 349 N.W.2d 552, 558 (Minn.1984). Parol evidence is also admissible to explain the parties' conduct subse-

quent to the written agreement. *Flynn v. Sawyer*, 272 N.W.2d 904, 908 (Minn.1978). "Whether a contractual provision is ambiguous is a question of law for the Court." *RJM Sales & Marketing, Inc. v. Banfi Products Corp.*, 546 F.Supp. 1368, 1374 (D.Minn.1982). "Under Minnesota law, parol evidence is inadmissible to vary the terms of a written contract, absent incompleteness or ambiguity of the contract." *Id.*

■ Here the trial court correctly found that the contract contained a latent ambiguity and admitted parol evidence to show that the parties understood, pursuant to their oral negotiations, that Kramer would be performing some, but not all of the Item 31 work. "Item No. 31 Sewage Disposal System" is an incomplete term. As such, parol evidence is admissible to complete the contract term. Rather than a true reformation of the contract, what the court actually did was to admit parol evidence to explain the incomplete term.

We hold the trial court properly admitted parol evidence to complete the contract term. Finding the admission of parol evidence was proper, the trial judge had to weigh the evidence to ascertain to what work the term "Item No. 31" referred.

■ Evidence presented to the trial court included copies of the two competing written bids in addition to testimony on Kramer's oral bid. All of these bidders excluded the construction of the lift station from their bids. Heftman testified it was his understanding that Kramer was not doing the lift station. The prices on all bids were comparable. Heftman's pricing sheets, admitted into evidence, supported his testimony.

The written contract contained no notations of which items were excluded from Kramer's "Item No. 31" bid, however, the parties agree that they intended, for example, that excavation, specified in the government contract as part of Item 31, be excluded. The handwritten addition made by Scharmer did not elaborate on the electrical work, further indicating that the written contract did not embody the complete agreement.

Scharmer Construction's alleged documentary evidence on the terms included in Kramer's telephone bid was lost and, as a result, not presented at trial. Evidence presented by Kramer refuted Scharmer's contention that Kramer was to construct the lift station; Kramer testified that Ralph Scharmer told him Scharmer Construction was going to build the lift station and that the cost was in Scharmer Construction's figures. The trial judge assessed the witness' credibility and believed Kramer's testimony.

Finally, the evidence showed that Scharmer Construction built the lift station and at no time asked Kramer to build it or indicated that Kramer was expected to build it. Scharmer Construction neither presented Kramer with a bill for constructing the lift station nor informed Kramer that it was charging Kramer for the lift station until two years after the project was completed.

Ralph Scharmer testified that the $7,000 quote for Kramer to build the lift station was given by Scharmer Construction to Kramer before the contract was signed. Both Kramer and Heftman testified that Scharmer Construction made no such quote.

Evidence was also introduced to show how much money Scharmer Construction lost on the job and that the amounts of the subcontracts may have been misrepresented in Scharmer's bid to D.O.T.

We hold the evidence sufficient to support the trial court's interpretation that the contract did not contemplate construction of the lift station by Kramer. Thus, the court correctly entered judgment against Scharmer Construction for the amount Scharmer Construction withheld from Kramer's payment for the lift station construction.

## II.

### Performance Bond Premium

■ The performance bond premium charged by Scharmer Construction was not an express term in the contract and was not within the scope of the items in the bid.

Appellants argue that including a one percent performance bond surcharge is, by industry custom, implied in all construction contracts.

Parol evidence was admitted to determine the existence of a bond term in the contract. We apply the same standard of review to the bond term as to the "Item No. 31" term, and we must determine whether evidence supports the court's finding that the parties did not agree that respondent was to pay the surcharge.

The court found that while the practice of charging subcontractors a one percent bond surcharge was "occasionally done," it was not a local business custom providing an additional term to the contract.

Appellant testified that it charged all subcontractors one percent on the Enterprise Rest job. Scharmer claimed that if the successful bidders did not include a one percent bond in their bids, upon payment, Scharmer automatically deducted the charge. Bids containing a notation, "if a bond is required add 1% to the bid price," were introduced into evidence. However, bids not containing the notation were also introduced.

Respondent's witness Heftman, Kramer's estimator, testified, based on his knowledge of government construction contracts, that there is no such custom in the industry. Respondent also pointed out that Scharmer Construction did not charge Winona Heating and Ventilating, another subcontractor on the job, a bond charge for its work done on the project. Bauer Electric owner, Fred Bauer, also testified that he did not pay a bond charge for work done on the project.

We hold that the evidence is sufficient to support the trial court's conclusion that there exists no industry custom to warrant, as a matter of law, implying payment of a one percent performance bond premium in the absence of a written term.

### III.

*Prejudgment Interest*

■ The trial court allowed prejudgment interest "at the legal rate" accruing from the date payment was demanded, April 26, 1978. We will not disturb the court's determination that prejudgment interest is payable on the entire amount of the claim. However, we hold that interest at the legal rate means that interest is calculated at the rate of six percent for the period between April 26, 1979, and July 1, 1984, under Minn.Stat. § 334.01, subd. 1 (1980), and thereafter at eight percent under Minn. Stat. § 549.09, subd. 1(c). *L.P. Medical Specialists v. St. Louis County,* 379 N.W.2d 104 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Jan. 31, 1986).

### DECISION

The trial court's judgment is affirmed. The court did not err in admitting parol evidence to explain the incomplete and missing contract terms. Prejudgment interest at the legal rate may be charged under Minn.Stat. § 334.01, subd. 1 (1980) for the period from April 26, 1979 to July 1, 1984, and under Minn.Stat. § 549.09, subd. 1(c) (1984) thereafter.

Affirmed as modified.