Karen HERBST, Respondent,

and

The Home Insurance Company, Intervenor, Respondent,

v.

NORTHERN STATES POWER COMPANY, Defendant and third-party Plaintiff, Appellant,

v.

BROWN AND CRIS, INC., third-party Defendant, Respondent.

No. C1–88–753.

Court of Appeals of Minnesota.

Dec. 6, 1988.

Review Denied Feb. 10, 1989.

Michael A. Kampmeyer, Michael M. Bader, Kampmeyer & O'Connor, St. Paul, for Karen Herbst.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Lawrence M. Baill, Wasserman & Baill, Minneapolis, for The Home Ins. Co.

Roderick D. Blanchard, Charles E. Spevacek, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Northern States Power Co.

Jeff M. Zalasky, Chadwick, Johnson & Condon, P.A., Minneapolis, for Brown and Cris, Inc.

Heard, considered and decided by LANSING, P.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

Northern States Power Company (NSP) appeals the trial court's liability and damage determinations for injuries arising from a gas pipeline explosion at a construction site. Karen Herbst, the injured worker, seeks review of the prejudgment interest computation and the reduction of future damages to present value.

## FACTS

The accident causing Herbst's injuries occurred in July 1982 during the construction of Interstate 494 in the Mendota Heights area. Brown and Cris, Inc. (Brown & Cris), Herbst's employer, was the construction subcontractor responsible for installing a storm sewer for the project. In the area of the accident, Brown & Cris crews excavated an east-west trench about 100 feet below the eventual freeway surface, installed the sewer, and returned the grade to normal. Temporary haul roads ran along the north and south sides of the trench to enable heavy equipment to travel in and out of the trench.

NSP, a distributor of natural gas, maintains a 12-inch diameter underground gas transmission pipeline (TL 0204) in the same area. TL 0204, a back-up line to one of three transmission lines that feed the St. Paul system, normally operates at 350 pounds per square inch (psi) of pressure. Near the accident site, TL 0204 ran horizontally across the trench, and angled sharply up the north side of the trench.

NSP, Brown & Cris, and the State of Minnesota knew that the gas transmission line ran perpendicular to and would cross over the sewer line. Three weeks before the accident, they met to discuss construction near TL 0204, including how to support the pipeline during excavation and whether to reduce pressure in the pipeline. NSP decided to decrease the pressure in TL 0204 to 50 psi to reduce stress on the pipeline during construction.

Gas transmission lines, which are often larger in diameter and operate at higher pressure than distribution lines, present a greater potential danger. Utilities are required by law to formulate written operating, inspection and maintenance procedures for all pipeline facilities, including transmission lines. 49 CFR §§ 192.603–.605, and Minn.Stat. § 299F.62 (1986).

NSP promulgated a procedure which included appointing a field supervisor to inspect the construction site daily and to maintain sufficient depth of cover over its pipeline. NSP's Russell Duncanson, foreman of emergency and location crews, and Willard Guse, construction supervisor, testified that NSP requires a 48-inch cover be maintained over its pipelines. In order to maintain sufficient depth, NSP must determine the underground path which the pipeline follows and must measure the actual depth of the pipeline. It is essentially undisputed that NSP assumed exclusive control and responsibility for locating and exposing the pipeline at the Interstate 494 construction site.

The trial court found that NSP visited the site once or twice daily while Brown & Cris worked near TL 0204. At Brown & Cris's request, NSP located and properly exposed TL 0204 on either side of the south haul road. NSP also directed Brown & Cris in excavating the sewer line trench below TL 0204. On Brown & Cris's further request, NSP attempted to locate TL 0204 in the area of the north haul road by inserting two- to three-foot probes into the ground. After failing to locate TL 0204 by this method, NSP assumed that it was safely buried four feet or more below the road's surface and gave Brown & Cris the "okay" to use the road. Brown & Cris employees testified that they relied on NSP

to determine the location and depth of the pipeline and that they relied on NSP's assurance that the road was safe.

Herbst worked on the night crew. At approximately 1:45 a.m. she assisted Brown & Cris employee Warren Metcalf in freeing a piece of stuck equipment. Returning to their regular work area, Metcalf drove the bulldozer and Herbst rode as a passenger. As the bulldozer climbed the north haul road, Metcalf put the blade down to even out ruts made by other heavy equipment. The blade struck TL 0204, which at the point of impact was located only six inches below the surface of the road. The gas from the pipeline ignited, sending flames 200 feet high into the air and severely burning Herbst.

Herbst suffered first, second and third degree burns over 17.5% of her body, including her arms, face, neck, and a strip of her back. The most serious burns were on her arms, which required skin grafts from her legs and abdomen. Herbst underwent painful medical procedures, including skin debriding, surgeries and physical therapy. She was hospitalized for three weeks and continued with outpatient treatment for physical therapy and emotional and psychological problems. She now has disfiguring scars which are sensitive to light and chemicals. Herbst also continues to suffer from post-traumatic stress disorder which has affected her personality. NSP did not challenge evidence of Karen Herbst's physical or psychological injuries.

Both NSP and Brown & Cris claimed that the other was responsible for the accident. The testimony was contradictory between witnesses and sometimes inconsistent by the same witness. The court found the testimony of key NSP employees not to be credible and questioned the demeanor and testimony of other NSP employees. Testimony conflicted on when the north haul road was constructed and where it was located. Some Brown & Cris employees testified that the road existed from seven to ten days prior to the accident, while some NSP employees denied ever seeing a north haul road.

The trial court, in a lengthy and detailed order, found NSP strictly liable and grossly negligent and awarded Herbst an undetermined amount of attorney fees for a violation of Minn.R.Civ.P. 11 and damages totaling $2,587,918.75. For past damages the court awarded $136,086, wage loss; $53,618.69, medical expenses; $200,000, emotional distress and increased risk of skin cancer; $400,000, pain and suffering; and $25,000, post-traumatic stress disorder. For future damages the award included $1,188,000, loss of earnings and impairment of earning capacity; $5,000, medical expenses; and $474,500, pain and suffering calculated at $25 per day for 52 years. The court also awarded $100,000 punitive damages.

Following post-trial motions, the court amended the damage award to exclude the Rule 11 costs and attorney fees, reclassified the $1,188,000 as solely for impairment of future earning capacity, reduced the $474,500 award for future pain and suffering calculated on a per diem basis to $274,-500 for future pain and suffering over 52 years, and added $200,000 for future emotional distress. The court added prejudgment and postjudgment interest and reduced future damages to present value. In its final award of $1,897,802.22, the court made minor adjustments in the interest calculations and in the present value reduction.

### ISSUES

1. Did the trial court err in its liability determination?

2. Are the trial court's findings on the damage issues sufficient to support the award and did the trial court err in awarding damages for increased risk of skin cancer or in including lost unemployment compensation in its calculation of lost wages and lost future earning capacity?

3. Is this a pending case for purposes of calculation of prejudgment interest and present value reduction?

4. Did the trial court err in awarding punitive damages against NSP?

## ANALYSIS

### I.

■ In its conclusions of law, the trial court determined that NSP was strictly liable for the injuries resulting from the pipeline explosion. Strict liability may be imposed on one who engages in an abnormally dangerous activity, but in Minnesota, maintaining a gas pipeline has not yet been defined as an abnormally dangerous activity. *Mahowald v. Minnesota Gas Co.*, 344 N.W.2d 856, 861 (Minn.1984). The supreme court has declined to find gas utility companies strictly liable for escaping gas when the gas lines are not in the gas distributor's exclusive control. *Id.* at 861–62.

Although NSP had the exclusive duty to determine the depth of TL 0204, it did not control all activity in and around the pipeline. Contractors regularly work in the vicinity of gas lines. To hold NSP strictly liable for the accident would be to make it responsible for construction operations over which it had no control and would absolve construction companies of their own responsibilities. The fact that this case involves a transmission pipeline which is more dangerous than a distribution pipeline does not alter our analysis.

The trial court, however, did not base its determination solely on strict liability. It also found that NSP was grossly negligent. NSP contends that gross negligence is part of the standard for strict liability and that the trial court's error in finding strict liability taints the negligence finding, requiring a new trial. We do not agree.

■ The trial court correctly concluded that NSP had a high duty of care, proportionate to the great danger associated with maintaining a gas transmission pipeline. *See Mahowald*, 344 N.W.2d at 861. It is well established that

> [w]hile the standard of care in a negligence action remains constant, the degree of care varies with the facts and

circumstances surrounding each particular case.

*Connolly v. Nicollet Hotel*, 254 Minn. 373, 382, 95 N.W.2d 657, 664 (1959). The degree of care which is reasonable depends on the circumstances, including the danger that may exist. The greater the hazard, the greater the degree of care which must be exercised. *Kachman v. Blosberg*, 251 Minn. 224, 232, 87 N.W.2d 687, 694 (1958). The trial court's finding that NSP fell grossly short of meeting that standard does not transform the basis to one of strict liability; the court's decision is still based on negligence principles.

■ In determining that NSP breached its high degree of care, the court found that NSP failed to locate and expose the pipeline, that NSP prohibited Brown & Cris from locating the pipeline, that NSP did not consider reducing the pressure in its pipeline to below 50 psi,[1] and that NSP lacked a safety program that met even minimal standards. While certain of the 202 findings may not individually stand up to careful scrutiny and while the findings may be overly rigorous in imputations of negligence, collectively they outline a sufficient basis for finding NSP grossly negligent and are reasonably supported by the evidence. *See State, Dept. of Public Welfare v. Thibert*, 279 N.W.2d 53 (Minn.1979).

■ The trial court also found that Brown & Cris was not negligent. This finding was premised on NSP's exclusive duty to locate and expose TL 0204, NSP's instructing Brown & Cris not to dig to find the depth of TL 0204, Brown & Cris's request for NSP to locate TL 0204, and Brown & Cris's complete reliance on NSP to locate and expose TL 0204.

Although we believe that the trial court could have found Brown & Cris negligent for continuing their activities in that area after NSP failed to locate the pipeline, *cf. DeVries v. City of Austin*, 261 Minn. 52, 110 N.W.2d 529 (1961) (holding a contractor liable for damage caused after a pipeline

---

1. NSP employees testified that NSP could have purged the pipeline of all gas in about one day at a cost of approximately $205. TL 0204, a back-up line, had never been used in an emergency situation and customer demand was at its lowest point during the late summer when the accident occurred.

was struck during construction), we are not the finders of fact. Both parties waived a jury and elected to try this case to the court. The court as the finder of fact had an opportunity to view the witnesses, assess their credibility and make factual findings. It did precisely that. The findings are not manifestly and palpably contrary to the evidence as a whole and must stand. *Tonka Tours, Inc. v. Chadima*, 372 N.W. 2d 723, 726 (Minn.1985).

## II.

### Sufficiency of Evidence Supporting Damages

NSP's challenge to the sufficiency of the evidence on damages is focused on errors contained in the original order. These errors were corrected by the trial judge in its amended order after post-trial motions. Although NSP accurately observes that some of the impermissible computations were reallocated to permissible categories, we do not agree these amendments prove arbitrariness or that the court "re-labeled, re-evaluated, and repackaged" its original award without an evidentiary basis. It is the function of the trial court to carefully reconsider its findings when the parties bring appropriate post-trial motions. *See* Minn.R.Civ.P. 52.02.

NSP does not identify any amounts in the final judgment that lack an evidentiary basis and we are satisfied that the damages have an adequate basis in the record and that a new trial on the issue of damages is not required.

### Unemployment Compensation

■ The trial court included lost unemployment compensation in its computation of lost wages and lost future earning capacity. Testimony at trial showed that industry custom allows construction workers to receive unemployment benefits in the winter because employment is typically seasonal. NSP stipulated to evidence showing the amount of the benefits and failed to object to testimony on the benefits. The court used the lower figure of seasonal wages plus unemployment compensation, rather than year-round wages,

in its computation. Under these circumstances, the trial court did not err in including unemployment benefits in its calculation of lost wages and lost future earning capacity.

### Increased Risk of Skin Cancer

■ The trial court also awarded past damages for Herbst's increased risk of developing skin cancer. This award was based on testimony by Dr. Lynn Solem that it is generally well-accepted in medical literature that recurrent breakdown in the skin may cause an increased risk of skin cancer and that Herbst had recurrent breakdown in the skin covering her elbows. Dr. Solem's testimony was fair comment on the implications of recurrent skin breakdown and is sufficient foundation for compensability under *Dunshee v. Douglas*, 255 N.W. 2d 42, 47 (Minn.1977). Although it is not clear why the trial court coupled this damage allocation with its award for emotional distress, it is separately supported in the record.

## III.

### Prejudgment Interest

■ The trial court awarded prejudgment interest on the compensatory damages, except future damages, from July 1, 1984 to July 9, 1987, the date of entry of judgment.

A 1984 amendment to Minn.Stat. § 549.09, subd. 1, provided for prejudgment interest, including interest on future damages to accrue beginning July 1, 1984 for all pending causes of action. Minn. Stat. § 549.09, subd. 1 (1984); *see H.J. Kramer Plumbing & Heating v. Scharmer*, 386 N.W.2d 742 (Minn.Ct.App.1986) (applying the 1984 amendment to a pending case).

The 1986 amendments to Minn.Stat. § 549.09, effective August 1, 1986, prohibit an award of prejudgment interest on future damages and allow interest to accrue from the commencement of the cause of action. Minn.Stat. § 549.09 (1986). The 1986 amendments do not apply retroac-

tively. *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 841 n. 18 (Minn. 1988). We remand this issue to the trial court to include prejudgment interest on the compensatory damages as a whole from July 1, 1984.

### *Repeal of Discount Statute*

■ The trial court reduced Karen Herbst's future damages award to present value under Minn.Stat. § 604.07 (1986). The statute was repealed effective April 13, 1988 for "all cases pending or brought on or after that date." 1988 Minn.Laws ch. 503, § 6. The notice of appeal in this case was filed April 4, 1988. A case awaiting appellate review is "pending" within the meaning of the statute. *Olsen v. Special School Dist. No. 1*, 427 N.W.2d 707, 713 (Minn.Ct.App.1988). Accordingly, this issue is also remanded to the trial court for recalculation of its future damages award consistent with discounting procedures existing prior to enactment of Minn.Stat. § 604.07.

### IV.

■ NSP claims that the trial court had no basis to award $100,000 punitive damages against NSP. Punitive damages may be awarded

> [o]nly upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others.

Minn.Stat. § 549.20, subd. 1 (1986). The trial court appears to base its award on NSP's assumption that the pipeline was safely buried after it failed to make the depth determination and allowed Brown & Cris to travel on the north haul road without making the depth determination. This assumption, while incorrect, is not so egregious that it supplies a basis for an award of punitive damages. NSP's assumption and resultant failure to act do not meet the "malicious, willful, or reckless disregard for the rights of others" standard required for an award of punitive damages. *Wilson v. City of Eagan*, 297 N.W.2d 146, 150 (Minn.1980). The record does not support the court's award of punitive damages.

### DECISION

The judgment appealed from is affirmed in part and reversed in part, and the case is remanded (1) to include prejudgment interest on the past and future damages from July 1, 1984; and (2) to recalculate future damages.